A04A0635. IN RE McCOOL.
(600 SE2d 403)

BLACKBURN, Presiding Judge.

Deborah R. Graham ("Graham") appeals an order of the Superior Court of Floyd County affirming, in part, an order of the Probate Court of Floyd County contending that the probate court did not have jurisdiction to determine ownership of certain personal property. Finding Graham's arguments to be meritless, we affirm.

Based on the record before us, sometime in early October 2002, Betty J. Tolbert ("Tolbert"), the daughter of Kathleen McCool ("McCool"), filed a petition seeking to be appointed as guardian for her mother.

On October 3, 2002, Graham, who is the daughter of Tolbert and the granddaughter of McCool, filed a verified petition for the appointment of an emergency guardian for McCool. Graham's verified petition listed as assets of McCool, seven bank accounts with balances totaling $353,000 and sought the position of emergency guardian for herself. Graham also filed a petition seeking appointment of a permanent guardian for McCool. Tolbert filed an objection to the appointment of Graham as emergency guardian on October 10, 2002. Tolbert's objection stated that Graham had "fraudulently obtained a power of attorney over the proposed ward and her assets" and had "transferred and depleted assets of the proposed ward." On the same day, Tolbert also amended her petition seeking the appointment of a guardian for McCool, asking that the county administrator be appointed as guardian for McCool.

On October 11, 2002, the probate court held a hearing on Graham's petition for the appointment of an emergency guardian. At the hearing, Graham gave sworn testimony that she had transferred money from joint accounts in McCool's, Tolbert's and her own name into accounts that were solely in her name in order to qualify McCool for Medicaid. Graham also testified that she had used $100,000 of McCool's money to purchase an annuity from her employer. Graham's children were listed as the beneficiaries of the annuity, and Graham was paid a commission by her employer on the sale of the annuity. When asked why the annuity was not listed as an asset of McCool's on her petition for the appointment of an emergency guardian, Graham stated it was "a scrivener's error." Throughout her testimony, Graham was unequivocal that the money in the bank accounts and the annuity belonged to McCool. During opening statements, Graham's counsel also stated that the money all belonged to McCool and had been transferred into Graham's name in an effort to qualify McCool for Medicaid.

At the conclusion of the October 11 hearing, the probate court appointed the county administrator, Bryant Durham ("Durham"), as guardian of the person and property of McCool. The probate court also ordered Graham to "turn over every penny of Ms. McCool's estate" to Durham. On October 18, 2002, the probate court issued "Letters of Emergency Guardianship of the Person and Property of Gravely Incapacitated Adult" to Durham, directing him, inter alia, to "collect

and preserve the assets" of McCool.[1]

On October 24, 2002, Durham filed a "Petition for Contempt" against Graham, stating that Graham refused to turn McCool's assets over to him as directed by the probate court. Although the first "Petition for Contempt" was later withdrawn by Durham, Graham continued to refuse to turn McCool's assets over to Durham and on November 6, 2002, Durham filed a second "Petition for Contempt" against Graham. On November 8, 2002, Graham filed a "Response and Objection to 'Motion to Compel,' " alleging, for the first time, that she had no assets belonging to McCool in her possession and that McCool had loaned her the money in the bank accounts and annuity.

The probate court held a hearing on Durham's "Petition for Contempt" on November 8, 2002. At the November 8 hearing, Graham stated that she had no assets belonging to McCool in her possession. Graham also stated that McCool had lent her $454,000 and that she had signed a promissory note promising to repay that amount in monthly installments of $25.[2] At the conclusion of the November 8 hearing, the probate court entered an order finding Graham in contempt and directing that she be held in the Floyd County jail for no less than 30 days and until she had turned McCool's assets over to Durham.

Graham appealed the probate court's November 8 order to the Superior Court of Floyd County. After a hearing, the superior court reversed the November 8 order, finding that the probate court lacked authority to incarcerate a person for contempt for 30 days and that the order was indefinite because it did not list the assets which were to be turned over to Durham. The superior court remanded the case back to the probate court for further hearing.

After the case was remanded to the probate court, Graham filed a "Motion for Transfer to Superior Court and for Order Directing Guardian to Return Money Unlawfully Seized."[3] Shortly thereafter, Graham also filed a "Demand for Jury Trial and Transfer to Superior Court." Both motions were based on the theory that the ownership of McCool's assets was contested and that the probate court lacked jurisdiction to determine ownership of personal property.

---

[1] Durham's appointment as guardian of McCool was made permanent on November 18, 2002, when "Letters of Guardianship of the Person and Property of Incapacitated Adult" were issued by the probate court.

[2] Although Graham's "Response and Objection to 'Motion to Compel' " states that a copy of the promissory note is attached as an exhibit, the promissory note does not appear in the record. It is, thus, impossible to determine what rate of interest Graham was to pay on the alleged loan. We note that even if no interest were paid on the alleged loan, at $25 per month it would take Graham over 1,513 years to repay her 87-year-old grandmother.

[3] Graham turned over McCool's assets to Durham sometime after she was found in contempt.

Following a hearing, the probate court issued an order dated May 5, 2003. The May 5 order ratified the probate court's finding that Graham was in contempt and reduced her sentence to 20 days jail time which was suspended until further order of the court. The probate court listed the assets at issue and, based on the testimony of Graham and the statements of her counsel at the October 11, 2002 hearing, found that there was no dispute as to the ownership of those assets. The probate court denied Graham's "Motion for Transfer to Superior Court and for Order Directing Guardian to Return Money Unlawfully Seized."

Graham appealed the probate court's May 5 order to the superior court. Following a hearing, the superior court entered an order on September 24, 2003. In its September 24 order, the superior court found that the probate court had improperly held Graham in criminal contempt. The superior court reversed the portions of the probate court's orders holding Graham in contempt. The superior court affirmed the portions of the probate court's May 5 order which denied Graham's motion for an order directing Durham to return McCool's assets to her, finding that Graham had acknowledged that the assets belonged to McCool and that the probate court had jurisdiction over the appointment of guardians and all related matters. It is from the superior court's September 24 order that Graham brings this appeal.

Graham contends that ownership of McCool's assets was contested and, thus, the probate court lacked jurisdiction to adjudicate the conflicting claims to the bank accounts and annuity at issue. Graham's argument fails because it ignores the binding effect of her admissions in judicio.

"A pleader is bound by the allegations of his own pleadings unless or until removed by amendment and is not permitted to introduce evidence in denial of such admission in judicio." *Bell v. State of Ga.*[4] See also OCGA § 24-4-24 (b) (7). Similarly, statements made by a party's counsel during a hearing or trial are regarded as admissions in judicio and are binding on the party. *Dixon Dairy Farms v. Conagra Feed Co.*;[5] *John H. Smith, Inc. v. Teveit.*[6] Although admissions in judicio apply only to admissions of fact, and not to conclusions of law, ownership of property is a matter of fact that can be admitted in judicio. *Bell*, supra.

A party is not allowed to disprove an admission made in his pleadings without first being granted leave by the trial court to

---

[4] *Bell v. State of Ga.*, 234 Ga. App. 693, 695 (507 SE2d 535) (1998).

[5] *Dixon Dairy Farms v. Conagra Feed Co.*, 245 Ga. App. 836, 838 (538 SE2d 897) (2000).

[6] *John H. Smith, Inc. v. Teveit*, 175 Ga. App. 565, 567 (1) (333 SE2d 856) (1985).

withdraw such pleading from the record. See, e.g., *Wilson v. Ortiz*.[7] Graham filed several pleadings following the probate court's appointment of Durham as emergency guardian of McCool. On October 25, 2002, Graham filed an "Amendment to Petition for the Appointment of an Emergency Guardian for an Alleged Gravely Incapacitated Adult" which "remov[ed] the emergency guardianship request as there no longer exists a need for an emergency guardianship." This amendment was silent as to the ownership of McCool's property and did not have the effect of withdrawing Graham's admissions in judicio regarding McCool's ownership of the money in the bank accounts and the annuity.

On November 8, 2002, Graham filed a "Withdrawal of Petition" which dismissed without prejudice her petition for the appointment of a permanent guardian for McCool. This pleading had no effect on the admissions in judicio made by Graham in her verified petition for the appointment of an emergency guardian for McCool or on those made by her counsel at the October 11, 2002 hearing.

It was not until August 28, 2003, when Graham filed her trial brief in the superior court, that Graham filed a document which directly purported to withdraw her admissions in judicio. Even if this trial brief were treated as an attempt to amend Graham's petition for the appointment of an emergency guardian for McCool and as a request to withdraw the admissions made by her counsel at the October 11, 2002 hearing, it still would not have the effect of withdrawing Graham's admissions in judicio. While the right to amend pleadings is very broad, it may not be exercised after the case has been tried and judgment rendered. *Hunt v. Henderson*.[8] Each of Graham's efforts to withdraw the admissions in judicio contained in her verified petition for the appointment of an emergency guardian for McCool and those made by her counsel at the October 11, 2002 hearing came after the probate court had ruled on the petition for the appointment of an emergency guardian. After that ruling, it was too late for Graham to amend her petition for the appointment of an emergency guardian to withdraw the admissions in judicio it contained. Id. See also OCGA § 24-4-24 (b) (1).

Because Graham was bound by her admissions in judicio, the probate court did not err in rejecting Graham's attempts to disprove those admissions. *Dixon*, supra. As there was no question regarding the ownership of the bank accounts and the annuity, the probate court had jurisdiction to order Graham to turn McCool's property over to McCool's guardian. While the superior court ruled that the probate

---

[7] *Wilson v. Ortiz*, 232 Ga. App. 191, 196 (3) (501 SE2d 247) (1998).
[8] *Hunt v. Henderson*, 178 Ga. App. 688, 691 (344 SE2d 470) (1986).

court had jurisdiction to enforce the order through a contempt proceeding, it held that the facts here did not support the probate court's finding of contempt and reversed such finding. Graham does not appeal the superior court's ruling on the contempt finding, and we do not address that issue.[9]

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED MAY 17, 2004.

*Barry V. Smith,* for appellant.

*Brinson, Askew, Berry, Seigler, Richardson & Davis, C. King Askew,* for appellee.

---

[9] OCGA §§ 15-9-30 (a) (5), (6), (10); 15-9-34.