A05A1599. RYDER INTEGRATED LOGISTICS, INC. et al.
v. BELLSOUTH TELECOMMUNICATIONS, INC.

(627 SE2d 358)

MIKELL, Judge.

Ryder Integrated Logistics, Inc. ("Ryder") and its insurer, Old Republic Insurance Company ("Republic"), appeal a judgment requiring them to provide insurance coverage and indemnification to BellSouth Telecommunications, Inc. ("BellSouth") for a premises liability claim brought by Thomas Ray, a Ryder employee who was seriously injured while working at a BellSouth facility pursuant to a contract between Ryder and BellSouth. At issue are certain provisions of the Ryder/BellSouth contract as well as Ryder's commercial general liability ("CGL") policy with Republic and Republic's excess policy. Although the trial court erred in finding that the indemnity provision of the Ryder/BellSouth contract was enforceable, the court correctly determined that the insurance provision was valid and that BellSouth was covered as an additional insured under the CGL policy that Ryder obtained with Republic. However, the judgment is silent as to whether BellSouth is covered under Republic's excess policy. We decide in favor of Republic on that issue but hold that Ryder is liable for the difference between the CGL policy limits and the amount of the Ray claim. Accordingly, the judgment is affirmed in part and vacated in part, and the case is remanded for the entry of an order consistent with this opinion.

The relevant facts are undisputed. Ryder provided transportation and logistical services to BellSouth pursuant to a comprehensive contract between the companies. Ray, a truck driver employed by Ryder, was injured while unloading bags of scrap wire at a BellSouth facility in Smyrna. Ray was standing on metal grates which gave way, and he fell 16 feet onto a concrete slab. Ray and his wife filed a personal injury and loss of consortium action against BellSouth, alleging that Ray was injured as a result of BellSouth's sole negligence. BellSouth tendered defense of the lawsuit to Ryder and Republic and demanded indemnification pursuant to the following provision in the contract:

[Ryder] agrees to indemnify and hold [BellSouth] harmless from any and all liabilities, causes of action, lawsuits, penalties, claims or demands . . . that may be made by:

1. Anyone for injuries of any kind, . . . resulting from [Ryder's] negligent or willful acts or omissions or those of persons furnished by [Ryder], its agents or subcontractors, or resulting from the use of [Ryder's] Services, material, or software furnished hereunder or resulting from [Ryder's]

failure to perform its obligations hereunder;

2. Any of . . . [Ryder's] . . . employees . . . for which [Ryder's] . . . liability to such employee . . . would otherwise be subject to payments under the state Worker's Compensation laws or . . . premises liability principles. . . .

[Ryder], at its own expense, shall defend [BellSouth], at [BellSouth's] request, against any such liability, cause of action, penalty, claim, demand, . . . or lawsuit, including any in which [BellSouth] is named as an "employer" or "joint employer" with [Ryder]. [BellSouth] shall notify [Ryder] promptly of any written claims or demands against [Bell-South] for which [Ryder] is responsible hereunder.

Ryder and Republic refused to defend or indemnify BellSouth, and BellSouth filed a third-party complaint against them, alleging breach of contract. Ryder and Republic ("third-party defendants") and BellSouth filed cross-motions for summary judgment on the third-party complaint.

BellSouth argued, in part, that because the underlying lawsuit was based on premises liability and was subject to workers' compensation payments, it triggered the second clause of the indemnity provision in the contract. Third-party defendants responded that the indemnity provision was unenforceable because it did not expressly cover losses solely attributable to the negligence of BellSouth.[1] BellSouth also argued that Ryder had agreed to make BellSouth an additional insured under the CGL policy obtained with Republic. In this regard, the contract contains an insurance provision requiring Ryder to "maintain all insurance, . . . including, but not limited to the following":

1. Adequate Worker's Compensation and related insurance required by [BellSouth] . . . ;

2. Employer's liability insurance with limits of at least $1,000,000 per occurrence; and

3. Commercial general liability insurance . . . [which] shall have limits of at least $1,000,000 for bodily injury, including

---

[1] See *Allstate Ins. Co. v. City of Atlanta*, 202 Ga. App. 692, 693 (415 SE2d 308) (1992) ("Georgia courts never imply an agreement to indemnify another for one's own negligence in the absence of express language") (citation omitted).

death, to any one person, [and] $1,000,000 as a result of any one occurrence. . . . All commercial general liability policies required herein shall name [BellSouth] as an additional insured with respect to work performed under this Agreement.

Ryder obtained a CGL policy containing an additional insured endorsement that named as an insured "any organization" for whom Ryder "is obligated by written agreement to provide liability insurance."

The trial court granted BellSouth's motion and denied that of the third-party defendants. The court reasoned that because Ray's complaint was based on premises liability, and the additional insured endorsement afforded coverage for premises liability claims, Republic had a duty to defend BellSouth and to indemnify it to the extent of the coverage provided by the policy. In addition, the trial court found enforceable the insurance and indemnity provisions of the Ryder/BellSouth contract. Thus, the court determined that even if Republic failed to provide coverage, Ryder would be liable for the claim. Finally, the court stated that, because Ryder had also agreed to provide BellSouth with insurance coverage for liability with respect to work performed under the contract, Ryder would be liable for breach of contract for Republic's failure to provide the required coverage even if the indemnity provision were unenforceable. Third-party defendants moved for reconsideration, which the trial court denied.

Ray and his wife subsequently settled their claims against BellSouth for a confidential sum that exceeded the CGL policy limit of $1,000,000 but was within the $6,000,000 limit of Republic's excess policy. The court dismissed Ray's complaint and entered final judgment in favor of BellSouth on its third-party complaint. The court declined to determine the amount of coverage available to BellSouth as an additional insured. Third-party defendants then filed the instant appeal.

1. Third-party defendants first enumerate as error the grant of summary judgment to BellSouth on its contractual indemnity claim. Specifically, they argue that the trial court erred in construing the indemnity and insurance provisions of the Ryder/BellSouth contract together to mean that the parties intended to shift the risk of loss for work performed under the contract from BellSouth to Ryder. They argue that the true issue is whether Ryder agreed to indemnify BellSouth for losses attributable to BellSouth's sole negligence.

Third-party defendants are correct that the indemnity provision is unenforceable. The trial court's ruling to the contrary was based on

*McAbee Constr. Co. v. Ga. Kraft Co.*;[2] however, that case is distinguishable. In *McAbee*, we held that an indemnity clause whereby a general contractor agreed to indemnify a property owner from claims, including death, arising out of the owner's sole negligence, was not rendered void by OCGA § 13-8-2 (b)[3] because the contract also contained a provision requiring the contractor to maintain liability insurance specifically covering the indemnity clause.[4] Construing these provisions together, we concluded that "the parties intended coverage by insurance, *not* ultimately indemnification of the 'indemnitee' . . . against its own negligence."[5] Thus, we determined that the insurance clause shifted the risk of loss to the insurance company regardless of which party was at fault.[6] In the case at bar, however, OCGA § 13-8-2 (b) is not at issue, and the indemnity clause in the Ryder/BellSouth contract does not expressly hold the indemnitee harmless for claims based on its sole negligence. It follows that *McAbee* does not govern the contractual indemnity issue.

Rather, the indemnity provision succumbs to the general rule that unless it is explicitly stated in the agreement, the indemnitor will not be held responsible for acts attributable to the indemnitee's own negligence.[7]

> [I]t is well established in Georgia that contractual indemnities do not extend to losses caused by an indemnitee's own negligence unless the contract expressly states that the negligence of the indemnitee is covered. The words of the contract will be scrutinized closely to discover whether such an intent is actually revealed in them and every presumption is against such intention. In the absence of explicit language to the contrary, [Georgia] courts will not interpret

---

[2] 178 Ga. App. 496 (343 SE2d 513) (1986).

[3] OCGA § 13-8-2 (b) states:
A covenant, promise, [or] agreement, . . . in . . . a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, . . . purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons . . . resulting from the sole negligence of the promisee . . . or indemnitee is against public policy and is void and unenforceable, provided that this subsection shall not affect the validity of any insurance contract.

[4] *McAbee Constr. Co.*, supra at 498.

[5] (Emphasis in original.) Id. Accord *ESI v. WestPoint Stevens*, 254 Ga. App. 332, 333 (562 SE2d 198) (2002). Compare *Federated Dept. Stores v. Superior Drywall & Acoustical*, 264 Ga. App. 857, 863 (1) (592 SE2d 485) (2003).

[6] *McAbee Constr. Co.*, supra at 498.

[7] See *Batson-Cook Co. v. Ga. Marble Setting Co.*, 112 Ga. App. 226, 230 (144 SE2d 547) (1965).

an indemnity agreement as a promise by the indemnitor to save the indemnitee harmless on account of the latter's own negligence.[8]

The rule that a party cannot be indemnified against its sole negligence unless the contracting parties expressly so agree is grounded in public policy concerns. "Public policy is reluctant to cast the burden for negligent actions upon those who are not actually at fault."[9] As BellSouth does not dispute that the claim was based on its sole negligence, the indemnity provision at issue is unenforceable.

2. However, that does not end our inquiry. As noted above, the Ryder/BellSouth contract also requires Ryder to procure and maintain a CGL insurance policy naming BellSouth as an additional insured with respect to work performed under the contract. The unenforceability of the indemnity provision does not affect the validity of the insurance provision because the contract was severable. "Under Georgia law where the parties express an intent to frame a severable contract, the invalid provision does not render other provisions of the contract void."[10] Here, the parties directly expressed an intent to frame a severable contract by including a severability clause in the contract.[11]

In addition, Ryder has failed to enumerate as error the trial court's rulings that the insurance provision is valid and that Ryder would be liable for breach of contract for Republic's failure to provide the required coverage even if the indemnity provision were unenforceable.[12] Therefore, those rulings stand affirmed, and we proceed to determine BellSouth's coverage under the CGL policy.

---

[8] (Punctuation omitted.) *Allstate Ins. Co.*, supra at 693, citing *Southern R. Co. v. Union Camp Corp.*, 181 Ga. App. 691, 692 (1) (353 SE2d 519) (1987). See *Batson-Cook Co.*, supra; *Ga. State Tel. Co. v. Scarboro*, 148 Ga. App. 390, 391 (2) (251 SE2d 309) (1978). See also *Central of Ga. R. Co. v. Lester*, 118 Ga. App. 794, 801 (2) (165 SE2d 587) (1968); *Bohannon v. Southern R. Co.*, 97 Ga. App. 849, 855 (104 SE2d 603) (1958).

[9] (Citation omitted.) *Park Pride of Atlanta v. City of Atlanta*, 246 Ga. App. 689, 690 (1) (541 SE2d 687) (2000). Accord *The Svc. Merchandise Co. v. Hunter Fan*, 274 Ga. App. 290, 296 (1) (617 SE2d 235) (2005).

[10] (Citations and punctuation omitted.) *Grove v. Sugar Hill Investment Assoc.*, 219 Ga. App. 781, 785-786 (3) (466 SE2d 901) (1996). See also OCGA § 13-1-8.

[11] The clause states:
 If any provision(s) of this Agreement are invalid or unenforceable under the laws applicable to the entire Agreement, such invalidity or unenforceability shall not invalidate or render unenforceable the entire Agreement. Instead, the entire Agreement shall be construed as if not containing the particular invalid or unenforceable provision(s), and the rights and obligations of [Ryder] and [Bell-South] shall be construed and enforced accordingly.

[12] See *Myers v. Texaco Refining & Marketing*, 205 Ga. App. 292, 294 (1) (422 SE2d 216) (1992) (even if indemnity provision were unenforceable, business owner would not be relieved of contractual duty to procure liability insurance for oil supplier).

3. Third-party defendants' challenge to the trial court's grant of summary judgment to BellSouth on its claim for insurance coverage is based on the wording of the additional insured endorsement to the CGL policy. The endorsement adds as an insured "[a]ny person or organization for whom the Named Insured is obligated by written agreement to provide liability insurance but . . . only with respect to liability arising out of your operations." Third-party defendants point out that BellSouth qualifies as an additional insured only if its liability to Ray arises out of Ryder's operations. Third-party defendants contend that, because the complaint alleges that BellSouth negligently maintained the premises where Ray fell, and maintenance of the premises was not part of Ryder's operations, the claim is excluded from coverage.[13] We disagree.

"Construction of an insurance policy is governed by the ordinary rules of contract construction, and when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent."[14] "In construing a contract of insurance to ascertain the intent of the parties, the court should give a term or phrase in the contract its ordinary meaning or common signification as defined by dictionaries, because they supply the plain, ordinary, and popular sense unless the words are terms of art."[15] "Operations" is not defined in the policy, and the phrase "arising out of your operations" has not been defined by Georgia case law. In the singular tense, "operation" is defined as "a doing or performing of a practical work" or "a business transaction."[16] Accordingly, we construe the phrase "arising out of your operations" to mean arising out of "a business transaction" or work performed by Ryder. When he was injured, Ray was a Ryder employee performing work at

---

[13] In its motion for summary judgment and its amended answer, third-party defendants admitted that BellSouth was an additional insured under the CGL policy. BellSouth contends that they are bound by this statement as an admission in judicio. "A pleader is bound by the allegations of his own pleadings unless or until removed by amendment and is not permitted to introduce evidence in denial of such admission in judicio." (Citations, punctuation and footnote omitted.) *In re McCool*, 267 Ga. App. 445, 448 (600 SE2d 403) (2004). However, this rule applies only to admissions of fact, not to opinions or conclusions of law. See *Threatt v. Forsyth County*, 262 Ga. App. 186, 189 (2) (585 SE2d 159) (2003). As the interpretation of the phrase "arising out of your operations" is a question of law for the court applying the rules of contract construction, the statements of third-party defendants in their pleadings, while some evidence on this issue, do not have the effect of a judicial admission. See *Anthem Cas. Ins. Co. v. Murray*, 246 Ga. App. 778, 780-781 (1), n. 10 (542 SE2d 171) (2000).

[14] (Punctuation omitted.) *Scottsdale Ins. Co. v. Great American Assurance Co.*, 271 Ga. App. 695, 696 (1) (610 SE2d 558) (2005), citing *Nationwide Mut. Fire Ins. Co. v. Somers*, 264 Ga. App. 421, 426 (3) (a) (591 SE2d 430) (2003).

[15] (Citations omitted.) *Western Pacific Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 678 (1) (601 SE2d 363) (2004).

[16] Webster's Third New International Dictionary, Unabridged. Merriam-Webster, 2002. http://unabridged.merriam-webster.com.

a BellSouth facility pursuant to Ryder's "business transaction," i.e., its contract, with BellSouth. Further, BellSouth was an organization for whom the "Named Insured," i.e., Ryder, was obligated by written agreement to provide liability insurance. Therefore, BellSouth is an additional insured under the CGL policy.

Moreover, other jurisdictions that have considered additional insured endorsements containing phrases similar to "arising out of your operations" have determined that the additional insured was entitled to coverage for its own negligence. Thus, in *Marathon Ashland Pipe Line v. Maryland Cas. Co.*,[17] the United States Court of Appeals for the Tenth Circuit held that the additional insured endorsement, which covered "liability arising out of your ongoing operations performed for that insured," provided coverage for the additional insured's liability arising out of its own negligence.[18] In *Mid-Continent Cas. Co. v. Swift Energy Co.*,[19] the Fifth Circuit Court of Appeals rejected the insurance company's argument that identical policy language limited the endorsement's coverage to liability resulting from named insured's negligence and excluded liability arising out of the negligence of the additional insured.[20] Reaching a similar conclusion in *Acceptance Ins. Co. v. Syufy Enterprises*,[21] the California Court of Appeals concluded that "[t]he fact that the defect [that caused the injury] was attributable to [the additional insured's] negligence is irrelevant, since the policy language does not purport to allocate coverage according to fault."[22] We find this reasoning sound. Therefore, where, as here, the insurer grants coverage for liability "arising out of" the named insured's work, the additional insured is covered without regard to whether the injury was attributable to the named insured or the additional insured.

4. Finally, third-party defendants complain that the trial court erred by failing to determine the amount of coverage available for the BellSouth claim.[23] In its final order, the court noted that the settlement exceeded the CGL policy limit of $1,000,000 but was less than $6,000,000, the limit of the excess policy that Republic issued to Ryder. However, the court made no ruling on whether BellSouth was covered under Republic's excess policy. This enumeration of error

---

[17] 243 F3d 1232 (10th Cir. 2001).

[18] Id. at 1237, 1240 (II) (A) (noting that "[t]his appears to be the majority rule") (citation omitted).

[19] 206 F3d 487 (5th Cir. 2000).

[20] Id. at 499-500 (II) (B) (1).

[21] 69 Cal. App.4th 321 (81 Cal. Rptr. 2d 557) (1999).

[22] Id. at 328-329. Accord *Mikula v. Miller Brewing Co.*, 701 NW2d 613, 622-623 (Wis. App. 2005); *McCarthy Bros. Co. v. Continental Lloyds Ins. Co.*, 7 SW3d 725, 729-730 (Tex. App. 1999).

[23] The parties argued this issue in the trial court.

presents two issues: (a) whether the contract required Ryder to cover a claim against BellSouth that exceeds $1,000,000, and (b) whether BellSouth is an additional insured under Republic's excess policy.

(a) We first address Ryder's liability under the contract. The contract provides that the CGL policy "shall have limits of at least $1,000,000 for bodily injury, including death, to any one person, [and] $1,000,000 as a result of any one occurrence." This provision requires Ryder to name BellSouth as an additional insured on all CGL policies mandated by the contract. Finally, and most significantly, the provision concludes with the following language: "*NOTWITHSTANDING ANY OF THE ABOVE, NO LIMIT OF INSURANCE SHALL IN ANY MANNER SERVE AS A LIMITATION OF [RYDER'S] LIABILITY UNDER ANY PROVISION OF THIS AGREEMENT.*"

"The cardinal rule of contract construction is to [determine] the intent of the parties,"[24] and "Georgia law does not permit us to ignore plain language in a contract or to construe it as meaningless."[25] We construe the italicized proviso to mean that Ryder was required to procure at least $1,000,000 in CGL insurance, but if a claim exceeded that amount, then Ryder would be liable for any deficiency. In other words, the $1,000,000 in coverage was not intended to limit Ryder's liability.

(b) We next determine Republic's liability for the amount of the claim that exceeds $1,000,000. The record contains an excess policy with limits of $6,000,000 per occurrence. The insuring agreement in the excess policy obligates Republic to pay on Ryder's behalf the amount of loss which exceeds the "loss payable by underlying policies described in Declaration[ ] 4." Declaration 4, in turn, cites Policy No. Z-35725, which is the CGL policy. BellSouth claims that because the loss payable provision is triggered by exhaustion of the CGL policy limits, BellSouth is covered under the excess policy as well. We do not agree. BellSouth is not named as an additional insured under the excess policy. Further, the additional insured endorsement to the CGL policy states that any coverage afforded shall be "in no event for more or broader insurance than" the Ryder/BellSouth contract requires. As noted above, the contract requires a CGL policy with "limits of at least $1,000,000." The contract did not require Ryder to procure an excess policy. Therefore, we conclude that the parties did not intend for the excess policy to apply to BellSouth.[26]

---

[24] (Footnote omitted.) *Tucker Materials v. Devito Contracting & Supply*, 245 Ga. App. 309, 310 (535 SE2d 858) (2000).

[25] *Myers*, supra at 297 (2).

[26] See generally *Musgrove v. Southland Corp.*, 898 F2d 1041, 1043 (5th Cir. 1990) (under Louisiana law, where contractor was contractually obligated to provide liability insurance of not less than one million dollars per occurrence for itself and refinery owner, owner was not an

In sum, we conclude that Republic has a duty to defend and indemnify BellSouth to the extent of its coverage under the CGL policy, and Ryder is liable for any deficiency. Those rulings are affirmed. However, the judgment is vacated and the case is remanded for the trial court to enter an order consistent with this opinion as to the excess policy.

*Judgment affirmed in part and vacated in part and case remanded with direction. Andrews, P. J., and Phipps, J., concur.*

DECIDED JANUARY 23, 2006 —
RECONSIDERATIONS DENIED FEBRUARY 21, 2006 — 

*Magill & Atkinson, David M. Atkinson, Roger D. Martin*, for appellants.

*Carter & Ansley, J. Robert Persons, Christopher N. Shuman*, for appellee.

---

insured under contractor's policy covering only those losses in excess of one million dollars because contractor failed to name owner as an additional insured under either policy until after the fatal accident).