**FOURTH DIVISION**
**RICKMAN, P. J.,**
**BROWN, J., and SENIOR APPELLATE JUDGE PHIPPS.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 23, 2021**

# In the Court of Appeals of Georgia

A20A1689. HOUSTON et al. v. JAMES.

PHIPPS, Senior Appellate Judge.

This case involves a family dispute over 28 acres of property. Sue James Houston and Teresa James Potts appeal the trial court's grant of summary judgment to their brother, Tom E. James, Jr. The trial court found that the 15 acres willed to Houston and Potts by their father had been acquired by James through prescriptive title. Because we find that questions of material fact exist regarding James's claim of right to these 15 acres, we reverse the trial court's order.

At the outset, we note that this Court reviews de novo a trial court's grant of summary judgment, construing all facts and inferences from those facts in the light most favorable to the nonmoving party. *Kelley v. Randolph*, 295 Ga. 721, 722 (1) (763 SE2d 858) (2014).

> [T]he non-movant is not required to produce evidence demanding judgment for that party, but only to present evidence which raises a material issue of fact. Where the evidence on motion for summary judgment is ambiguous or doubtful, the party opposing the motion must be given the benefit of all reasonable doubts and of all favorable inferences and such evidence construed most favorably to the party opposing the motion. Furthermore, while a movant's evidence is to be carefully scrutinized, a respondent's evidence is to be treated with indulgence.

*Walker v. Sapelo Island Heritage Auth.*, 285 Ga. 194, 196-197 (2) (674 SE2d 925) (2009) (citation and punctuation omitted).

So viewed, the record shows that in the late 1970s James's father gave him permission to move a trailer onto the property and build a house. According to James, his father either told him that he owned[1] or promised him that he would own[2] the entire 28 acres. Houston and Potts, on the other hand, assert that their father repeatedly told them that he wanted to leave one acre to each of his children, grandchildren, and great grandchildren when he died, and that he would leave 10

---

[1] In his Complaint, James alleges: "Decedent . . . told [James] that [James] owned the entirety of the 28 acres in the 1970's."

[2] In his motion for summary judgment, James states: "In the early 1970's [James] was promised the land at issue in this case by his father, . . . who held title to it until his death in 2017." However, James appears to deny any such promise in his appellate brief: "Appellants give no citations in the record for their factual allegation that Appellee had an agreement with his father to deed the property to him at a later date."

2

acres to James. None of the parties have produced any evidence regarding their father's wishes. According to James's complaint, in 1979 his father changed his mind about giving James the property and ordered James to leave the property, but James refused to leave, claimed the property as his own, and continued for 30 years to exercise exclusive possession, dominion, and control of the property to the exclusion of all others.

Notwithstanding this claim, James stated in documents supporting his motion for new trial that his father "held title to [the property] until his death in 2017" and referred to their father as his sisters' "predecessor in title." In fact, James admits that in 1982 he received a deed from his father to .96 acres of the property, including the area where he built his house. It is undisputed that his father did not deed James any other property at that time. Houston and Potts both testified during their deposition that James asked their father for 10 acres of the land approximately five years before their 2019 deposition, and that made their father very angry. They also testified that although James paid taxes for the acre their father deeded him, their father paid the taxes on the rest of the property. In addition, according to Houston and Potts, their father helped build the barn on the property and helped pay for cattle and seed.

3

In 2017, the father died, and his 2016 will left approximately 15 of the 28 acres to Houston and Potts and approximately 12 acres as a life estate to James.[3] James filed this action seeking a declaratory judgment granting him title under adverse possession to the 15 acres willed to Houston and Potts, and an injunction preventing Houston and Potts from selling or occupying the land. Houston and Potts answered and counterclaimed for an injunction to prevent James from trespassing on their property, as well as attorney fees for frivolous litigation. James subsequently moved for summary judgment. The trial court granted the motion, concluding that James satisfied all the required elements for prescriptive title and that Potts and Houston provided no evidence contradicting James's evidence. Houston and Potts have appealed this order.

OCGA § 44-5-161 (a) outlines the essential elements of a claim for adverse possession. According to that statute, prescriptive title can be obtained if the possession of property meets four conditions. The possession

(1) Must be in the right of the possessor and not of another;
(2) Must not have originated in fraud except as provided in Code Section 44-5-162;

---

[3] The remaining acre consisted of the .96 acre of property deeded to James in 1982.

4

(3) Must be public, continuous, exclusive, uninterrupted, and peaceable; and
(4) Must be accompanied by a claim of right.

OCGA § 44-5-161 (a). In other words, the possession must be public, continuous, exclusive, uninterrupted, peaceable, accompanied by a claim of right, and not originate in fraud. *Childs v. Sammons*, 272 Ga. 737, 739 (2) (534 SE2d 409) (2000). The burden is on the party claiming prescriptive title to prove, by a preponderance of the evidence, possession in conformance with the above elements for a period of 20 years. *Dyal v. Sanders*, 194 Ga. 228, 233 (21 SE2d 596) (1942); OCGA § 44-5-163 ("Possession of real property in conformance with the requirements of Code Section 44-5-161 for a period of 20 years shall confer good title by prescription to the property against everyone except the state and those persons laboring under the disabilities stated in Code Section 44-5-170."). "[W]hether the facts exist which constitute adverse possession, is for the jury to judge. Whether, assuming the facts proven to be true, they constitute adverse possession, is for the court to decide." *Ga. Power Co. v. Irvin*, 267 Ga. 760, 766 (2) (482 SE2d 362) (1997) (citation omitted).

In this case, there is no dispute that, for a period of more than 20 years, James's possession of the 28 acres has been public, continuous, uninterrupted, and peaceable.

However, Houston and Potts argue on appeal that material issues of fact exist regarding James's claim of right to the property, whether his possession was merely permissive, and whether his possession has been exclusive. Pretermitting whether James's possession was without permission and exclusive, we find material issues of fact remain regarding whether James possessed a legitimate claim of right to the property.

A "claim of right" is synonymous with a "claim of title" and a "claim of ownership." *Walker*, 285 Ga. at 196 (2); *Simmons v. Community Renewal & Redemption, LLC*, 286 Ga. 6, 6 (1) (685 SE2d 75) (2009). "While this does not mean that the possession must be accompanied by a claim of title out of some predecessor, it does mean that there must be some claim of title in the sense that the possessor claims the property as his own." *Simmons*, 286 Ga. at 6 (1) (citations and punctuation omitted). "A claim of right will be presumed from the assertion of dominion, particularly where the assertion of dominion is made by the erection of valuable improvements." *Childs*, 272 Ga. at 739 (2) (citation and punctuation omitted). However, the exercise of dominion over property does not eviscerate a possessor's need to demonstrate a claim of right when conflicting evidence of the claim of right is presented. See *Chancey v. Ga. Power Co.*, 238 Ga. 397, 398 (1) (233 SE2d 365)

(1977) (a claim of right may be presumed from the assertion of dominion and the erection of valuable improvements, but only in the "absence of evidence to the contrary").

While innocent or mistaken possession of property may ripen into adverse possession, knowledge that the property belongs to someone else is fatal to an adverse possession claim because it is well-settled that "no prescription runs in favor of one who took possession of land knowing that it did not belong to him." *Kelley*, 295 Ga. at 723, n.1 (1) (citation and punctuation omitted); *Ellis v. Dasher*, 101 Ga. 5, 9-10 (29 SE 268) (1897). "[O]ne must enter upon the land claiming in good faith the right to do so. To enter upon the land without any honest claim of right to do so is but a trespass and can never ripen into prescriptive title." *Halpern v. Lacy Investment Corp*, 259 Ga. 264, 265 (1) (379 SE2d 519) (1989); see also *Mayor and Council of Forsyth v. Hooks*, 182 Ga. 78, 84 (184 SE2d 724) (1936) ("Before prescription can arise under an asserted claim of right, the claim must be honestly entertained.") (punctuation omitted).

Here, there is evidence that James may have exercised dominion over all 28 acres of the property. Although Houston and Potts testified during their deposition that their father helped build the barn and helped pay for cattle and seed, they both

7

admitted that since the 1970s, James has cultivated, fenced, mowed, kept cattle on, lived on, parked vehicles on, built buildings on, and sold hay from the entire property. And, "[c]ontinuous farming of property, the erection of fences, and the construction of buildings are indicia of possession." *Walker*, 285 Ga. at 198 (2). There also is some evidence that Houston, Potts, and even their father "felt like as far back as the '80s that [James] had taken his land" against his will.

However, there also is evidence that James occupied and exercised dominion over the property knowing that his father retained title to all 28 acres. Whether James's father gave him the property, promised him the property, or never did either because he planned to leave one acre to each of his children, grandchildren, and great grandchildren when he died is disputed. Regardless which may be correct, however, James admits that his father changed his mind in 1979. Thus, James should have been aware that his father retained valid title to all 28 acres.

In fact, evidence in the record supports a finding that James, in fact, did know his father still held title to the property. For example, in 1982, after James took possession of the entire tract and began telling people it was his own, and after his father changed his mind about the property, James admits that his father deeded him

8

.96 acres. No other portions of the tract were deeded to him at that time. In addition, years later James requested another 10 acres from his father, which his father refused.

Furthermore, in documents supporting his motion for summary judgment James refers to his father as his sisters' "predecessor in title" and states that his father "held title to [the property] until his death in 2017."

> A pleader is bound by the allegations of his own pleadings unless or until removed by amendment and is not permitted to introduce evidence in denial of such admission in judicio. . . . Although admissions in judicio apply only to admissions of fact, and not to conclusions of law, ownership of property is a matter of fact that can be admitted in judicio.

*In re McCool*, 267 Ga. App. 445, 448 (600 SE2d 403) (2004) (citations omitted); *Bell v. State*, 234 Ga. App. 693, 695 (507 SE2d 535) (1998). These document create a question of fact about whether James knew the property did not belong to him. See generally *Simmons*, 286 Ga. at 7 (1) (where a claimant admits title in another, such admission defeats a claim of right).

Based on the evidence in the record, questions of material fact exist and it should be for a jury to determine whether James possessed a legitimate claim of right to the 15 acres willed to Houston and Potts. See *Ga. Power Co.*, 267 Ga. at 766 (2); *Halpern*, 259 Ga. at 265-266 (1) (it is for the jury to determine whether a possessor

9

maintained hostile possession of the property in good faith that a claim of right exists).

> It must be remembered that this appeal is from a grant of summary judgment. In such a posture, the non-movant is not required to produce evidence demanding judgment for that party, but only to present evidence which raises a material issue of fact. . . . [T]he party opposing the motion must be given the benefit of all reasonable doubts and of all favorable inferences and such evidence construed most favorably to the party opposing the motion.

*Walker*, 285 Ga. at 196-197 (2) (citation omitted). The evidence in the record may support a reasonable inference that James entered and remained on the property knowing that it did not belong to him and without a good faith claim of right to do so, and, therefore, a jury could find that his possession was nothing more than a trespass which can never ripen into prescriptive title by adverse possession. See *Simmons*, 286 Ga. at 7 (1).

> Accordingly, under the proper standard in this summary judgment case, with all inferences from the evidence construed most favorably toward [Houston and Potts], evidence was produced raising a material question of fact as to whether [James] possessed the property for the requisite period of time under a claim of right. Thus, it was error to grant [James's] motion for summary judgment.

*Walker*, 285 Ga. at 198 (2).

*Judgment reversed. Rickman, P. J., and Brown, J., concur*.