A08A0272. BOYD v. PACKAGING CORPORATION OF AMERICA.
(664 SE2d 277)

MILLER, Judge.

This is the second appearance of this case before this Court.[1] On December 17, 2000, Gary Boyd sued Southway Industrial Services, Inc. ("Southway") and Packaging Corporation of America ("PCA") pursuant to the doctrine of respondeat superior to recover for injuries sustained in a crane accident at the PCA paper mill located in Clyattville. PCA moved for summary judgment, asserting that it could not be held liable because Southway and Entech were independent contractors as to whose employees PCA owed no duty of care and that it could not have had superior knowledge of the wind

---

[1] On interlocutory appeal in *Southway Indus. Svcs. v. Boyd*, 283 Ga. App. 850 (642 SE2d 889) (2007), we reversed the trial court's denial of summary judgment to Southway, finding that its crane operator was a "borrowed servant" of Packaging Corporation of America's general contractor, the Entech Corporation ("Entech"). Id. at 851.

conditions that caused the accident. Boyd appeals from the trial court's order granting PCA's motion for summary judgment, arguing (i) that PCA was in violation of federal Occupational Safety and Health Administration ("OSHA") rules and regulations, (ii) that the work was inherently dangerous and nondelegable, and (iii) that PCA breached its duty to keep its premises safe by failing to comply with its own policies and procedures. Discerning no error, we affirm.

> On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to judgment as a matter of law.

(Citation omitted.) *Wachovia Bank v. Moody Bible Institute of Chicago*, 283 Ga. App. 488, 489 (642 SE2d 118) (2007).

So viewed, the evidence shows that Entech, PCA's general contractor, leased a 180-ton crane from Southway for a job at its Clyattville plant. That project involved the replacement of metal plates used in a smoke stack precipitator unit to remove contaminants emitted during the paper manufacturing process.

On the morning of December 17, 2000, Entech employees were engaged in rigging and lifting such plates by crane in windy conditions. Each plate weighed 1,500 to 2,000 pounds, was approximately ten feet wide, twenty-four feet long, and was made of sixteen gauge steel.[2] Entech employee Boyd authorized his rigger to release the rope securing a bundle of plates that had been stacked vertically and leaned against the smoke stack to be rigged for lifting. While the rigger sat on the untied plates to secure them by his weight and with no PCA employee present, Entech foreman Alan Hall, Boyd, and the crane operator met to determine whether lifting operations should be suspended due to windy conditions. In so doing, the crane operator left the cab of his crane, having stabilized the load of precipitator plates by resting them on the road beneath them while they remained suspended.

As the men were talking, a gust of wind caused the plates suspended from the crane to shift. As they did so, Boyd and Hall sought to steady the plates until the crane operator could regain control of the situation from the cab of his crane. Contemporaneously, another gust of wind blew the vertically stacked plates out from under the rigger. Boyd, still attempting to secure the suspended plates, was pushed down. The suspended plates then brushed across

---

[2] 16-gauge equals a thickness of approximately 0.0635 inches.

him and the stacked plates fell on his legs, causing his injuries. The instant litigation followed.

1. Boyd contends that PCA violated four OSHA regulations and is therefore liable for the tortious actions of its independent contractor, Entech, pursuant to the statutory exception set out in OCGA § 51-2-5 (4). We disagree.

OCGA § 51-2-5 (4) provides that "[a]n employer is liable for the negligence of a contractor . . . [i]f the wrongful act is the violation of a duty imposed by statute." Boyd asserts that PCA is in violation of the duties set out in 29 CFR § 1910.261 (c) (2) (vi) ("No person shall be permitted to walk beneath a suspended . . . bucket[ ] or hook."), 29 CFR § 1910.261 (c) (5) (iii) ("Where binder chains and crane slings are used, the crane slings shall be attached and taut before the binder chains are released."), 29 CFR § 1910.179 (n) (3) (x) ("[E]mployer[s] shall insure that the operator does not leave his position at the controls while the load is suspended."), and 29 CFR § 1926.550 (a) (19) ("All employees shall be kept clear of loads about to be lifted and of suspended loads.").

Under 29 CFR §§ 1910.179 (n) (3) (x) and 1926.550 (a) (19), the employer plainly bears the responsibility to require the crane operator not to lift loads over its employees. See *Oxford v. Carter*, 216 Ga. 821, 822 (120 SE2d 298) (1961) (We apply the plain meaning to the words of the statute to carry out the legislature's intention.). In this regard, the Code of Federal Regulations provides that the word "[e]mployer means contractor or subcontractor within the meaning of the Act and of [Part 29 CFR § 1926]." 29 CFR § 1926.32 (k). And this Court has held that Southway's crane operator was the borrowed employee of general contractor Entech, not PCA. Thus, because Entech must be considered the "employer" under 29 CFR §§ 1910.179 (n) (3) (x) and 1926.550 (a) (19), these statutes do not render PCA liable.

Further, the remaining statute to which Boyd points, 29 CFR § 1910.261 (c) (2) (vi) and (c) (5) (iii), regulate only handling pulpwood with cranes, the latter as to lifting pulpwood from trucks. For that reason, they are here inapplicable. See *Oxford*, supra, 216 Ga. at 821. Even were it otherwise, Boyd's expert opined that 29 CFR § 1910.261 (c) (2) (vi) was intended to protect an "innocent plant employee who might be using the roadway for whatever purpose or an outside vendor driving through the plant" — not those personnel working at a job site. There also was no evidence that PCA provided any guidance to Entech as to the manner it stacked and handled the precipitator plates before the accident.

Given the foregoing, summary judgment for PCA was not error upon Boyd's claimed violations of duties imposed by statute.

284

2. Boyd also contends that PCA breached a duty to Entech's employees that could not be delegated to a contractor because crane-lifting the plates was an "inherently dangerous activity" under OCGA § 51-2-5 (2) ("An employer is liable for the negligence of a contractor . . . [i]f, according to the employer's previous knowledge and experience, the work to be done is in its nature dangerous to others however carefully performed."). However, because there was no evidence showing that PCA knew that the replacement of precipitator plates was inherently dangerous based upon its "previous knowledge and experience," summary judgment for PCA was not error on this account. See *Jacobs v. Thomson Oak Flooring*, 250 Ga. App. 56, 60 (4) (550 SE2d 465) (2001) (requiring that the employer have previous knowledge and experience that work is "in its nature dangerous to others however carefully performed") (citation and punctuation omitted).

3. Finally, Boyd contends that the grant of summary judgment to PCA was in error because PCA breached its duty to keep its premises safe by failing to either complete a site-specific safety plan or require Entech's employees to sign individual contracts indicating that they had reviewed PCA's safety procedures.

Here, the only duty PCA owed to Entech's employees was

> the ubiquitous duty of not imperiling their lives by [its] own affirmative acts of negligence. . . . It is also the general rule that the independent contractor's employer [(PCA)] is under no duty to take affirmative steps to guard or protect the contractor's employees against the consequences of the contractor's negligence or to provide for their safety.

(Citations omitted.) *United States v. Aretz*, 248 Ga. 19, 24 (B) (1), (2) (280 SE2d 345) (1981). Boyd appears to identify three allegedly dangerous conditions: the manner in which the precipitator plates were stacked on the job site, the operation of the crane, and the windy conditions. Boyd's expert conceded that Entech had exclusive responsibility for safety as to the work it was to perform. The safety of plate stacking and lift operations thus was clearly the responsibility of Entech and PCA liability for an "affirmative" act of negligence is therefore not implicated on this basis. Liability in PCA arising out of windy conditions is not established because there is no evidence showing that its knowledge of the same was equal to or greater than that of Entech. *Owens v. DeKalb Med. Center*, 253 Ga. App. 19, 20 (1) (557 SE2d 404) (2001). In this regard, Entech's construction manager deposed that if PCA were to be responsible for the failure to shut down the job because of weather, somebody from PCA responsible for safety "would have had to have seen, felt, [and]

known of the wind situation." No such PCA employee was present at the work site at the time of the accident. Accordingly, the instant claim of error is also without merit.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JUNE 26, 2008.

*Slappey & Sadd, James N. Sadd, Carlock, Copeland, Semler & Stair, Jacqueline M. Piland, James G. Tunison, Jr.,* for appellant.

*Drew, Eckl & Farnham, Bruce A. Taylor, Jr., Lisa S. Higgins, Lowendick, Cuzdey, Ehrmann, Wagner, Stine & Sansalone, Nicholas M. Hollander, Hall, Booth, Smith & Slover, Lynda W. Kenney, Mark A. Barber,* for appellee.