**THIRD DIVISION**
**DILLARD,**
**BRANCH AND MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 27, 2014**

# In the Court of Appeals of Georgia

A13A1874. BRUCE v. GEORGIA-PACIFIC, LLC.

A13A1806. GEORGIA-PACIFIC, LLC v. LINCOLN GENERAL
     INSURANCE COMPANY et al.

BRANCH, Judge.

Malcolm Bruce was injured when he fell off a loaded truck owned by his employer, Annett Holdings, Inc. d/b/a TMC Transportation ("TMC"), at a facility in Monticello, Georgia, owned and operated by Georgia-Pacific, LLC. On appeal from a grant of summary judgment to Georgia-Pacific in Bruce's personal injury suit, Bruce argues in Case No. A13A1874 that questions of material fact remain as to both Georgia-Pacific's negligence and Bruce's contributory negligence. On appeal from a grant of summary judgment to TMC and its insurer, Lincoln General Insurance Company, in Georgia-Pacific's third-party action, Georgia-Pacific argues in Case No.

A13A1806 that TMC and Lincoln have a duty to defend Georgia-Pacific as to Bruce's claims. We find no error and affirm in both cases.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." (Citations and punctuation omitted.) *Walker v. Gwinnett Hosp. System*, 263 Ga. App. 554, 555 (588 SE2d 441) (2003). A trial court's grant of summary judgment is reviewed de novo on appeal, construing the evidence in the light most favorable to the nonmovant. *Ethridge v. Davis*, 243 Ga. App. 11, 12 (530 SE2d 477) (2000).

Case No. A13A1874

Construed in favor of Bruce, the record shows that on October 15, 2007, Bruce, a TMC employee, drove one of the company's flatbed tractor-trailers to Georgia-Pacific's Monticello plant to pick up a load of wood paneling. Bruce had been a commercial truck driver for more than 20 years, and had been driving flatbed trailers, a job which often required him to cover and secure loads, for at least six months. Bruce himself testified that an entirely flat surface on top of a load was "very rare," and that every load was uneven "to some extent."

While Bruce waited in a break room, a Georgia-Pacific employee loaded the trailer with a variety of paneling, resulting in an uneven surface on the top of the load.

2

After the Georgia-Pacific employee had finished loading the trailer, Bruce, who was responsible for inspecting, covering, and securing the load, climbed onto the trailer and began covering it with Visqueen, a translucent plastic sheeting supplied in 4-foot rolls by Georgia-Pacific for the purpose of protecting wood products from moisture. According to Bruce, Georgia-Pacific required its contractor truckers to apply Visqueen, and Bruce had previously and successfully wrapped a load with Visqueen at the same Georgia-Pacific facility. Georgia-Pacific's own employees were forbidden to climb on or secure loaded trailers.

From his position on top of the load, Bruce unrolled, cut and unfolded the Visqueen, crawling along the top of the load as he did so, leaving a foot or two uncovered at the front and the rear to stand on. Bruce got down from the front, completed wrapping the sides of the load with Visqueen, and tied down the corners. Bruce then began covering the load with the first of two tarpaulins, one from the back towards the front and the second, overlapping the first, from the front towards the back. He crawled across the back of load on his hands and knees unrolling the 4-foot-wide first tarp, which was still folded, until its edge was lying a few feet past the middle of the load. Bruce then got up off his hands and knees and was bending over in the process of unfolding and throwing a portion of the first tarp over the edge of the

3

load when he stepped into a space within the load, lost his balance, and fell off the trailer. The Georgia-Pacific forklift operator who had loaded the trailer and who responded to Bruce's fall testified that as he lay on the ground, Bruce exclaimed that he "[couldn't] believe [that he] did this," that he had "been driving a truck for 20-something years," and that he "[couldn't] believe [that he was] that stupid" as to fall off his own trailer. Treatment of Bruce's injuries required him to be airlifted to a hospital.

On February 9, 2009, Bruce filed his first complaint against Georgia-Pacific, which Bruce voluntarily dismissed in December of the same year. On March 17, 2010, Bruce filed this renewal action. In June 2011, Georgia-Pacific moved for summary judgment, which the trial court granted after a hearing. This appeal followed.

1. Bruce first argues that the trial court erred when it granted summary judgment to Georgia-Pacific because the company had not implemented Occupational Safety and Health Administration (OSHA) regulations requiring fall protection for workers applying Visqueen to trailers in or next to a building. We disagree.

A cause of action for negligence requires "(1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection

4

between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982).

On appeal, plaintiffs have cited only their OSHA expert's deposition, at which the expert cited 29 CFR 1910.132 (d) and 1926.501,[1] as supporting a conclusion that Georgia-Pacific was obligated to provide fall protections to Bruce. Plaintiffs argue both that the regulations themselves are evidence of a legal duty owed to them by Georgia-Pacific and that Georgia-Pacific's failure to enforce these OSHA regulations

---

[1] 29 CFR 1910.132 (d) provides that an employer

shall assess the workplace to determine if hazards are present, or are likely to be present, which necessitate the use of personal protective equipment (PPE). If such hazards are present, or likely to be present, the employer shall: (i) [s]elect, and have each affected employee use, the types of PPE that will protect the affected employee from the hazards identified in the hazard assessment; (ii) [c]ommunicate selection decisions to each affected employee; and, (iii) [s]elect PPE that properly fits each affected employee.

29 CFR 1926.501 (b) (1) provides that "[e]ach employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8 m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems."

gives rise to a cause of action for breach of that duty undertaken for the benefit of the injured person. See, e.g., *Dupree v. Keller Industries*, 199 Ga. App. 138, 141 (1) (404 SE2d 291) (1991), citing OCGA § 51-1-6 (an injured party may recover for a breach of duty if he suffers damage thereby and if the duty is imposed by law for the benefit of the injured person).

As a preliminary matter, the OSHA regulations cited by plaintiffs as giving rise to a legal duty on Georgia-Pacific's part do not provide that the owner of a truck loading dock like the one at issue here is obligated to provide fall protections to any person working on a trailer there. 29 CFR 1910.132 (d) sets out only a general standard that an employer "shall assess the workplace to determine if hazards are present, or are likely to be present, which necessitate the use of personal protective equipment," and that if such hazards exist, the employer shall select and have the employee use personal protection equipment. Such general admonitions cannot overcome evidence introduced by Georgia-Pacific showing that as OSHA itself interprets 29 CFR 1926.500 et seq., "walking-working surfaces" requiring fall protection devices do not include tractor-trailers. According to OSHA, "fall protection is not required for employees who are on vehicles and trailers when," as here, "the employee must be on the vehicle or trailer to perform his or her duties," in which case

6

"there is typically no feasible means of providing fall protection." See *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158 (664 SE2d 223) (2008) (courts should defer to an administrative agency's "interpretation of statutes it is charged with enforcing or administering and the agency's interpretation of rules and regulations it has enacted to fulfill the function given it by the legislative branch"); *Upper Chattahoochee Riverkeeper, Inc. v. Forsyth Cty.*, 318 Ga. App. 499, 502 (734 SE2d 242) (2012) ("the interpretation of a statute or regulation is a question of law"). Likewise, fall protections described in 29 CFR 1926.501, which on their face apply to "construction," do not apply here because the loading of a tractor-trailer does not involve construction. See *Cleveland Elec. Illuminating Co. v. OSHA Review Comm.*, 910 F.2d 1333, 1336 (II) (6th Cir. 1990) ("an operation will be considered 'construction' [for purposes of OSHA] only if the work is performed on, or in close proximity to, [a] construction site") (citation and punctuation omitted).

More fundamentally, and as we held in *Dupree*, the relevance of OSHA regulations "in a particular case . . . depend[s] on the relationship of the parties." 199 Ga. App. at 141 (1). Specifically, OSHA imposes a duty of care only "between an employer and its employees," and "[i]f a defendant owes no legal duty to the plaintiff, there is no cause of action in negligence." Id. at 141-142 (1), citing 29 USC § 651 et

7

seq.[2] Georgia courts have thus concluded that a company cannot be held liable for a violation of OSHA regulations unless it is bound to enforce such regulations for the safety of its own employees. In *Boyd v. Packaging Corp. of America*, 292 Ga. App. 281 (664 SE2d 277) (2008), for example, this Court held that because an injured construction worker was the employee of an independent contractor, neither the crane operator involved in moving the heavy steel plates that injured the worker nor the crane operator's employer owed any duty of care to the injured worker. Id. at 283 (1).

Given the undisputed evidence in this case that Georgia-Pacific's employees were forbidden to climb on or secure loaded trailers, Georgia-Pacific had no obligation to provide protection for falls from such trailers to its own workers at the Monticello facility. It follows that it owed no such duty to employees of other companies working at that facility. See *Boyd*, 292 Ga. App. at 283 (1) (affirming grant

---

[2] According to the federal legislation itself, OSHA should not

> be construed to supersede or in any manner affect any workmen's compensation law or to enlarge *or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees* arising out of, or in the course of, employment.

(Emphasis supplied.) 29 USC § 653 (b) (4).

8

of summary judgment to owner of paper mill where accident occurred); *Dupree*, 199 Ga. App. at 142 (1) (OSHA regulations did not establish any common-law duty running from a past owner of a hydraulic punch press to "remote users" including a worker employed by the purchaser of the press).

2. The trial court's grant of summary judgment to Georgia-Pacific was also proper because undisputed facts show that Bruce had knowledge of the hazard posed by the uneven load surface equal or superior to any knowledge the company may or should have had of that hazard.

"[I]n order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co.*, 268 Ga. 735, 736, 748-749 (2) (b) (493 SE2d 403) (1997). "The crux of a premises liability case is the owner's superior knowledge of the hazard; thus, a plaintiff's actual, subjective awareness of the hazard precludes a recovery under this theory." (Footnote omitted.) *Carroll v. Ga. Power Co.*, 240 Ga. App. 442, 443-444 (1) (523 SE2d 896) (1999) (citing *Robinson*, supra). In *Carroll*, for example, a plaintiff was injured in a fall from a ladder allegedly in violation of OSHA standards

9

set out in 29 CFR § 1910 for its lack of a safety cage at the top of the ladder. This Court concluded not only that the subject regulation did not apply, but also that when the plaintiff knew that the ladder he had climbed had no safety cage and that all ladders run out of rungs, his knowledge of any hazard was equal or superior to the defendant's and should have led him to take additional care as he approached the top of the ladder. *Carroll*, 240 Ga. App. at 443-445 (1), (2). As this Court has also noted, "'no danger is more commonly realized or risk appreciated, even by children, than that of falling.'" *O'Neal v. Sikes*, 271 Ga. App. 391, 392 (609 SE2d 734) (2005), quoting *Riley v. Brasunas*, 210 Ga. App. 865, 867 (1) (438 SE2d 113) (1993).

Here, Bruce's own testimony established that at the time he fell, he knew that tractor-trailer loads such as the one he was attempting to cover were almost always uneven. Bruce's own testimony also established that he crossed over the uneven load while successfully unrolling, cutting and unwrapping the Visqueen before he attempted to cover the back part of the load with the first tarp, during which attempt he fell. Under these circumstances, which showed both that Bruce had superior knowledge of any hazard posed by the uneven load and that he failed to take due care for his own safety, summary judgment was properly granted to Georgia-Pacific. See *Delk v. Quiktrip Corp.*, 258 Ga. App. 140, 141-142 (572 SE2d 676) (2002) (affirming

grant of summary judgment where plaintiff did not contest that she had actual knowledge of raised gas caps at gas station, and where she had "safely traversed a similar path through the traffic and across the alleged hazard under the same conditions" just before her injury).

Case No. A13A1806

3. In this companion appeal from the grant of summary judgment to TMC and Lincoln, Georgia Pacific argues that Lincoln owed a duty to defend Georgia-Pacific against Bruce's claims as an additional insured of TMC's policy. We disagree.

The relevant facts are not in dispute. On the date of Bruce's fall, TMC was operating under a contract carriage agreement to haul freight for Georgia-Pacific. Paragraph 7 of the agreement provides in relevant part:

> (b) [TMC] agrees to assume all risks growing out of or occurring in the performance of this Agreement by [TMC], its agents or employees for . . . any death or injury to any person or persons, whether or not employed by TMC, . . . occurring during the performance of this Agreement or upon the premises where this Agreement is being performed, *except when caused by the negligence of [Georgia-Pacific], its agents and employees.*
>
> (c) [TMC] further agrees, and it hereby binds itself, at its own sole cost and expense, *to defend, save harmless and indemnify* [Georgia-Pacific] from and against any and all manner of suits, claims, judgments,

11

demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort . . . on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, arising out of or predicated upon the operations of trucks of or by [TMC], its agents or employees, . . . or the transportation and handling of goods by [Georgia-Pacific], its agents or employees, . . . provided that *this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was caused by any act or omission of [Georgia-Pacific]*.

(Emphasis supplied.)

Paragraph 8 of the agreement also provided that TMC would "obtain and maintain insurance covering the risks incident to" the agreement and that TMC "shall cause [Georgia-Pacific] to be named as an additional insured" on TMC's commercial liability and automobile liability policies. The insurance policy duly issued by Lincoln to TMC defined an "additional insured" as an entity "as designated in the endorsements," but "*only* to the extent that the *insured*" – that is, TMC – "is obligated by a covered contract to reimburse, hold harmless or indemnify the additional insured(s)." (Emphasis supplied.) An endorsement to the same policy identified Georgia-Pacific as an "additional insured" on the policy, but also noted that coverage was extended to Georgia-Pacific "as respects the trucking operations of the insured

12

[TMC], *but only with respect to occurrences arising out of the negligence of [TMC and] its agents, servants or employees*." (Emphasis supplied.)

As a preliminary matter, we reject Georgia-Pacific's assertion that the absence of the words "duty to defend" from the final and exculpatory clause of Paragraph 7 (c) means that the clause applies only to TMC's responsibilities to hold harmless and to indemnify. When the exculpatory clause refers to "*this* hold harmless and indemnity," it clearly refers to the paragraph's aforementioned responsibility "*to defend*, save harmless *and* indemnify" Georgia-Pacific. See OCGA § 13-2-2 (4) (provisions of a contract must be read as a whole and in conjunction with one another). We also reject Georgia-Pacific's reading of Paragraph 8 and the endorsement adding it as an additional insured as abrogating the underlying policy's bar to a duty to defend for claims caused by Georgia-Pacific's own negligence. Although Georgia-Pacific is an additional insured under the Lincoln policy, and although the endorsement includes liabilities incurred during TMC's own "trucking operations," the policy limits Lincoln's provision of coverage to Georgia-Pacific as "only to the extent that the insured" – that is, TMC – "is obligated by a covered contract to reimburse, hold harmless or indemnify" Georgia-Pacific, and TMC is not so obligated as to claims arising from Georgia-Pacific's own negligence.

13

More important, the complaint before us asserts negligence only as to Georgia-Pacific and its employees acting within the scope of their employment, and TMC's carriage agreement excludes any duty to defend or indemnify Georgia-Pacific as to claims arising from Georgia-Pacific's own negligence. We are mindful of the well-established rule that

> [i]f the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action. . . . [T]o excuse the duty to defend the petition must unambiguously exclude coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy. Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured.

(Citation, punctuation and footnote omitted.) *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 497-498 (1) (a) (646 SE2d 682) (2007). We also note Georgia-Pacific's citation to this Court's predecessor to one of our Supreme Court's decisions as support for its argument that Lincoln has a duty to defend Georgia-Pacific from Bruce's claims. See *Ryder Integrated Logistics v. BellSouth Telecommunications*, 277 Ga. App. 679 (627 SE2d 358) (2006), rev'd on other grounds, *Ryder Integrated*

14

*Logistics v. BellSouth Telecommunications*, 281 Ga. 736, 737 (642 SE2d 695) (2007).[3]
As we noted in *Ryder*, however, those parties' written agreement extended comprehensive general liability (CGL) coverage to "any person or organization" for whom Ryder was obligated to obtain coverage for any "liability arising out of your operations." Id. at 684 (3); see also *BBL-McCarthy*, 285 Ga. App. at 496 (enforcing insurer's duty to defend where subcontract specified subcontractor's duty to defend against all claims "arising out of the performance of the [s]ubcontractor's work").

Unlike the broad "arising out of your operations" language seen in these cases, however, the carriage agreement before us requires TMC to obtain insurance only as to "the risks incident to this Agreement," not including liability for claims "caused by the negligence of [Georgia-Pacific]," just as it excludes any duty on the part of Lincoln to defend, hold harmless or indemnify claims "caused by any act or omission of [Georgia-Pacific]." In light of these unambiguous contract terms, the trial court did not err when it concluded that Lincoln had no duty to defend Georgia-Pacific as to

---

[3] Our Supreme Court reversed this Court's determination that Ryder's insurer had a duty to defend and indemnify BellSouth up to the limits of Ryder's comprehensive general liability policy, with Ryder "liable for any deficiency," 277 Ga. App. at 686-687 (4), for reasons including that "Ryder did not, under the laws of this State, agree to indemnify BellSouth for BellSouth's sole negligence." 281 Ga. at 740.

15

Bruce's claims, which allege negligence only by Georgia-Pacific employees. See *United Parcel Svc. v. Colt Security Agency*, 296 Ga. App. 815, 816 (2) (676 SE2d 22) (2009) (affirming grant of summary judgment to insurer as to its duties to defend and indemnify plaintiff delivery company when injured security guard's complaint contained no allegations of negligence against anyone other than delivery company's employees); *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 231 Ga. App. 206, 208-209 (2) (498 SE2d 782) (1998) (where "no claim covered by the policy was asserted" by a plaintiff, who had "failed to apprise the insurer of facts which would bring the claims within the coverage," the insurer "justifiably refused the duty to defend" that plaintiff as to those claims) (citation omitted).

*Judgments affirmed. Dillard and McMillian, JJ., concur.*