**FOURTH DIVISION**
**COOMER,**
**MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 31, 2019**

# In the Court of Appeals of Georgia

A19A0960. SOUTHERN STATES CHEMICAL, INC. et al. v.
TAMPA TANK & WELDING, INC. et al.

COOMER, Judge.

This case comes to us for a third time on appeal.[1] Southern States Chemical, Inc., and Southern States Phosphate and Fertilizer Company (collectively, "Southern") appeal the trial court's order granting Tampa Tank & Welding, Inc. f/k/a Tampa Tank, Inc. ("Tampa Tank") and Corrosion Control, Inc.'s ("CCI") (collectively "Appellees") motion for summary judgment. In its third appearance before this Court, Southern argues that the statute of repose, OCGA § 9-3-51 (a), is not applicable because the claims against Appellees was not for a construction

---

[1] See *Southern States Chemical, Inc. v. Tampa Tank & Welding, Inc.*, 331 Ga. App. XXVI (March 27, 2015) (unpublished) ("*Southern States I*"); *Southern States Chemical, Inc. v. Tampa Tank & Welding, Inc.*, 338 Ga. App. XXVIII (July 14, 2016) (unpublished) ("*Southern States II*").

deficiency but for breach of express written warranties. Southern further contends the trial court erred by concluding that the statute of limitation on simple written contracts bars its claims against Appellees, by ruling that Southern failed as a matter of law to exercise due diligence to discover Appellees' alleged fraud, and by dismissing Southern's breach of contact per se claim. The parties appeared before this Court on August 22, 2019, for oral argument, at which this Court directed the parties to supplement their briefs with arguments regarding two issues: (1) whether the statute of repose alleging deficiencies in improvements to real property under OCGA § 9-3-51 (a) applies in light of our Supreme Court's holding in *Turner v. Marable-Pirkle, Inc.*, 238 Ga. 517, 518 (233 SE2d 773) (1977); and (2) whether there was any consideration given by Southern for the alleged 43 or 45-year warranty that Southern contends was made as part of a report prepared by CCI for Tampa Tank in 2002. For the reasons that follow, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A trial court's grant of summary judgment is reviewed de novo on appeal, construing the evidence in the light most favorable to the nonmovant." *Bruce v. Georgia-Pacific, LLC*, 326 Ga. App. 595, 595 (757 SE2d 192) (2014) (citations and punctuation omitted).

2

1. Relevant Facts and Procedural History

The relevant facts and procedural history of this case are set forth in this Court's prior opinions as well as the order giving rise to this appeal:

> The record shows that [Southern] manufacture[s], buy[s], sell[s], and store[s] sulfuric acid in bulk at a facility in Savannah. In 2000, [Southern] contacted Tampa Tank about renovating a 24-foot tall, 130-foot wide storage tank (the "Duvall tank") that had previously stored molten sulfur, such that it would be suitable for storing up to 2.2 million gallons of sulfuric acid. . . .
>
> The initial letter proposal between Tampa Tank and [Southern] contained the following express one-year warranty provision: "All material and workmanship are guaranteed for a period of twelve (12) months from the date of completion of this work." . . .
>
> The Duvall tank renovation was completed in January 2002. The renovation required Tampa Tank to install an impervious plastic ("HDPE") liner directly on top of the steel floor of the tank. Tampa Tank then welded a new steel floor above the old floor of the tank, and a layer of sand filled the gap between the old floor and the new floor. In order to prevent corrosion of the new floor, Tampa Tank installed a cathodic corrosion control system ("cathodic system") in the sand layer. Tampa Tank installed, but did not design, the cathodic system; it contracted with CCI to provide the design, materials, on-site technical assistance, and testing of the system.

During installation, Tampa Tank's foreman consulted with CCI over the phone regarding the installation of the magnesium strips of the cathodic system, but CCI did not assist with the installation onsite. CCI's contract with Tampa Tank only required it to design the cathodic system, procure the materials for its installation, and test the system once installed. [Southern] contends that Tampa Tank misplaced magnesium ribbons, which are a key component of the cathodic system, drove a Bobcat bulldozer over the sand layer after the ribbons were installed, which tampered with the integrity of the system, and failed to properly seal the new floor, which left it open to corrosive rainwater.

[Southern] contends that CCI failed to properly test, design and commission the cathodic system. After the tank's renovation was substantially completed in January 2002, CCI performed a post-installation commissioning inspection of the cathodic system. The report resulting from that inspection indicated that the cathodic system was working and properly installed. However, the cathodic system and the sand layer it was installed upon had been covered up with steel plates by the time CCI arrived onsite to perform its inspection. CCI inspected the cathodic system when the tank was empty, and it was possible that a portion of the steel plates was not in contact with the sand layer during the testing because there was no liquid pressing the plates down into the sand. [Southern] contends that CCI failed to properly test the cathodic system by neglecting to confirm that Tampa Tank kept the sand layer dry, by failing to verify that Tampa Tank had not driven a Bobcat over the floor, and by conducting an inspection when the tank was empty, which only put the cathodic system to limited use. [Southern] also

4

fault[s] CCI for not having an engineer on-site to ensure that the corrosion protection system was installed properly. CCI made no warranty to [Southern] about the tank. After inspection, CCI prepared a post-installation report concluding that the Duvall Tank's cathodic system had been properly installed and was fully functioning. CCI sent the report to Tampa Tank, but not to [Southern].

On July 3, 2011, it was discovered that sulfuric acid was leaking from the base of the Duval Tank. The parties hotly dispute the cause of the leak. Southern contends the hole in the tank resulted from improper installation and "a defective or otherwise unsuitable cathodic corrosion protection system." The defendants, on the other hand, assert that inadequate maintenance caused sludge to form inside the tank which interacted with the sulfuric acid in a way that caused a hole to form on the inside of the tank. There is also evidence that Southern failed to preserve the portion of the particular plate where the hole formed.

In *Southern States I*, this Court reversed the trial court's grant of summary judgment in favor of appellees Tampa Tank and CCI. We remanded the case to the trial court to determine if Appellees were estopped from raising the statute of repose defense based on alleged fraud. Specifically, we instructed the trial court to determine if a genuine issue of fact existed "as to whether Appellees fraudulently concealed any defects in the renovation, installation or testing of the Duval Tank" and whether Southern exercised due diligence. This Court also reversed the trial court's denial of Southern's motion for partial summary judgment and remanded it to the trial court with direction. We instructed

5

that if the trial court determined Appellees were estopped from raising the statute of repose defense due to fraud, it should then determine if a causal connection exists between any negligence per se by the Appellees and the injury suffered by Southern.

Following remand, the trial court issued a lengthy, 22-page order in which it meticulously examined each of the five allegedly fraudulent statements supporting Southern's equitable estoppel claim. With regard to two of the statements, it concluded there was not sufficient evidence of a knowingly false representation.

The trial [court] also found that although genuine issues of fact existed with regard to one or both of the defendants on the remaining three representations in the report, Southern's failure to exercise due diligence precluded the application of equitable estoppel. In support of this conclusion, the trial court relied upon the following recommendation in the Commission Report: "Resurvey the new cathodic protection system annually using the services of a NACE certified Cathodic Protection Specialist," as well as industry standards recommending annual surveys of the cathodic system. It is undisputed that Southern did not conduct any annual surveys by a corrosion engineer. In the trial court's view, "Southern States cannot argue reliance on allegedly false representations in the Commission Report, but also ignore the recommendation on the same page of the Commission Report to resurvey the cathodic protection system annually."

*Southern States II*, 338 Ga. App. XXVIII at pg. 1-6 (citations and footnote omitted).

6

After the case was remanded to the trial court following Southern's first appeal, *Southern States I*, Southern filed a fourth amended complaint which included for the first time, a claim for breach of contract based on the one-year express warranty and for breach of contract per se. . In a July 2015 order, the trial court granted Appellees' motion for summary judgment finding, on the issue of fraud and equitable estoppel, that fraud did not toll the statute of repose and that Southern did not exercise due diligence to discover any alleged fraud by Appellees because it never conducted annual testing of the cathodic protection system as recommended by the post-inspection report. The trial court determined that because an essential element of fraud was absent, Appellees were not estopped from successfully asserting a statute of repose defense under OCGA § 9-3-51 (a). The July 2015 order gave rise to Southern's second appeal in this case. In *Southern States II*, this Court affirmed the trial court's judgment granting Appellees' motion for summary judgment without remand for further adjudication. See *Southern States II*, 338 Ga. App. XXVIII at pg. 6-18.

Southern then petitioned the Georgia Supreme Court for a writ of certiorari, which was denied. See *Southern States Chemical, Inc. v. Tampa Tank & Welding, Inc.*, S17C0109, 2017 Ga. LEXIS 276 (April 17, 2017) (unpublished). However, prior

7

to the entry of a final disposition order by the trial court, Southern filed a fifth amended complaint, wherein it raised claims for breach of contract under an express warranty, breach of contract per se, and attorney fees and litigation costs. Tampa Tank and CCI each filed dispositive motions, which the trial court granted in its December 2017 final order. In the final order, the trial court found that the allegations in Southern's fifth amended complaint related to Southern's breach of contract claims against Appellees "fall within the ambit of OCGA § 9-3-51 (a) under which [Appellees] have already successfully asserted a statute of repose defense." The trial court further held that Southern's claims for breach of contract are also barred under the six-year statute of limitation applicable to actions upon written simple contracts because Southern's contract claims were brought approximately ten years after substantial completion of the project. With that, the trial court concluded that Southern's ancillary claims for attorney fees and litigation costs likewise failed. This appeal followed.[2]

---

[2] Southern appealed the trial court's final order to the Georgia Supreme Court, challenging the constitutionality of the application of the statute of repose with respect to warranty claims under certain contracts. See *Southern States Chemical, Inc. et. al. v. Tampa Tank & Welding, Inc.*, S18A1256 (decided November 15, 2018). The Supreme Court transferred the case to the Court of Appeals, finding that Southern's constitutional claim was previously resolved in prior constructions of the statute. See *id*. at 2

2. Express Warranties

It is undisputed that in the initial letter proposal between Tampa Tank and Southern, Tampa Tank made the following express one-year warranty provision: "All material and workmanship are guaranteed for a period of twelve (12) months from the date of completion of this work." However, Southern contends that in addition to the express 12 month warranty with Tampa Tank, Southern was an intended third-party beneficiary of CCI's contract with Tampa Tank for the cathodic protection system and that certain promises were made in favor of Southern in CCI's post installation compliance report. Southern contends that the calculations of the estimated life expectancy of the cathodic protection system in the post installation report CCI prepared and sent to Tampa Tank are akin to an express warranty by CCI that the system should last 43 or 45 years. We disagree.

Pretermitting whether the calculations of the estimated life expectancy of the cathodic protection system is an express warranty, "[i]n order for [Southern] to have standing to enforce a contract . . . it must clearly appear from the contract that it was intended for [its] benefit. The mere fact that [Southern] would benefit from performance of the agreement is not alone sufficient." *Donnalley v. Sterling*, 274 Ga.

9

App. 683, 685 (1) (618 SE2d 639) (2005) (citations and punctuation omitted). "Although the third-party beneficiary need not be specifically named in the contract, the contracting parties' intention to benefit the third party must be shown on the face of the contract." *Brown v. All-Tech Investment Group, Inc.*, 265 Ga. App. 889, 897 (2) (a) (i) (595 SE2d 517) (2003) (citation omitted). "A third-party beneficiary contract is one in which the promisor engages to the promisee to render some performance to a third person." *Northen v. Tobin*, 262 Ga. App. 339, 344 (2) (b) (585 SE2d 681) (2003) (footnote omitted).

On September 25, 2000, Tampa Tank signed a purchase order confirming a January 12, 2000 letter in which CCI agreed to provide Tampa Tank "design documents, installation plans, materials, and final testing with a compliance report" for a cathodic protection system. Tampa Tank agreed to pay $13,690 to CCI for the costs associated with the services CCI provided. Neither the January 12, 2000 letter nor the September 25, 2000 purchase order include any promises to or from Southern regarding CCI's services. Southern was not a signatory on the September 25 purchase order and was not invoiced by CCI for payment related to CCI's services. While the letter and invoices provide that CCI would conduct post installation testing and provide a report to Tampa Tank, nothing in the record suggests that the report was

10

incorporated as part of Southern's bargain with Tampa Tank or that Tampa Tank was required under its contract with Southern to provide Southern with a copy of CCI's post installation compliance report.

At oral argument before this Court, we asked the parties to supplement their briefs and answer the question whether there was any consideration given by Southern for the alleged 43 or 45-year warranty Southern contends was made as part of the post installation compliance report prepared by CCI for Tampa Tank in 2002. In its supplemental brief, Southern argued that it paid consideration for the warranties of the post-installation report when it paid Tampa Tank's itemized cost of $13,690 for the installation of the cathodic protection system, noting that $1,200 of that amount was "for system testing and the preparation of a final written report." However, Southern cites no Georgia case law to support its position that payments made by a contractor to a subcontractor for services can be co-opted by a third-party beneficiary as consideration. See OCGA § 13-3-40 (a) ("A consideration is essential to a contract which the law will enforce. An executory contract without such consideration is called nudum pactum or a naked promise."). Thus, the only actionable warranty from which Southern could seek damages is the one-year express warranty in its contract with Tampa Tank.

11

3. Statute of Repose

(a) As an initial matter, in its amended brief on appeal, Southern argues that the application of the statute of repose to its fifth amended complaint would be unconstitutional because under the theory of freedom to contract, contractual obligations that extend beyond the period of repose should effectively waive the protections of the statute of repose and to rule otherwise would impair the fundamental liberty of landowners to protect themselves by contract. This argument is unavailing. As our Supreme Court noted in its order transferring Southern's appeal to this Court, the Impairment Clause of the Georgia Constitution[3] "is implicated only by the retroactive application of statutory law to contractual obligations that preexist the statute," and when as here, "a statute is applied prospectively to contracts formed subsequent to the adoption of the statute, the Impairment Clause is not violated." See *Southern States Chemical, Inc. v. Tampa Tank & Welding, Inc.*, S18A1256 (decided November 15, 2018). See also OCGA § 9-11-60 (h) ("[A]ny ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings

---

[3] See Ga. Const. of 1983, Art. I, Sec. I, Par. X ("No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed.").

12

in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be."). Because our Supreme Court has already addressed this issue, we decline Southern's invitation to reconsider it.

(b) Southern contends the trial court erred in applying the statute of repose to Southern's contract and express warranty claims. In support of its argument, Southern contends our Supreme Court's ruling in *Turner*, 238 Ga. at 518 is controlling, and that under *Turner*, the renovation of the pre-existing storage tank was not an improvement to realty and therefore not subject to the statute of repose. Southern argues in the alternative that the statute of repose is not applicable here because Southern's complaint does not allege deficient construction but instead alleges the breach of an express promise. We disagree.

OCGA § 9-3-51 (a) provides in relevant part that

No action to recover damages . . . [f]or any deficiency in the survey or plat, planning, design, specifications, supervision or observation of construction, or construction of an improvement to real property; . . . shall be brought against any person performing or furnishing the survey or plat, design, planning, supervision or observation of construction, or construction of such an improvement more than eight years after substantial completion of such an improvement.

13

In *Turner*, the City of Adel contracted with Marable-Pirkle to convert the City's electrical distribution system to a higher voltage system. 238 Ga. at 518. "This required the removal of every transformer in the system and replacement of each transformer with a transformer of greater capacity. This conversion also required the replacement of lightning arrestors, fuse cutouts, and other hardware on the poles with similar equipment of greater capacity." *Id*. at 518. Eleven years after the project was completed, appellant was injured when a roto-tiller that he was operating came into contact with the wire running from one of the City's utility poles. *Id.* at 518. The Supreme Court concluded that OCGA § 9-3-51 (a) was not applicable in that case because "the mere changing or replacement of such equipment on a pole already erected is not an improvement to realty pursuant to this statute." *Id*. at 519.

Although the holding in *Turner* has not been disapproved, we disagree with Southern's contention that *Turner*'s holding is controlling here or that the facts in *Turner* are analogous to those in the present case. Instead, we find our Supreme Court's analysis in *Mullis v. Southern Co. Svcs., Inc.*, 250 Ga. 90, 93-94 (4) (296 SE2d 579) (1982) better assists in our analysis of the issues in the case before us. In *Mullis*, appellants challenged, among other things, a trial court's conclusion that the construction of an electrical system could qualify as an improvement to real property.

14

250 Ga. at 94 (4). In its analysis, our Supreme Court listed several commonsense factors to consider when analyzing what constitutes an improvement of real property.

> These factors are (1) is the improvement permanent in nature; (2) does it add to the value of the realty, for the purposes for which it was intended to be used; (3) was it intended by the contracting parties that the "improvement" in question be an improvement to real property or did they intend for it to remain personalty.

*Mullis*, 250 Ga. at 94 (4) (citations omitted). The Court held that the electrical system "clearly qualifies as an improvement to real property," noting the project's permanence, as shown by its "complex system of buildings and electrical components,"and that the electrical system is essential to the purpose of the realty. *Id*.

Applying the *Mullis* factors to the renovation of the storage tank at issue in the present case, the conversion of the storage tank was a significant undertaking and not a simple repair or addition of component parts. Permanent modifications were made to not only the tank itself but additional components were added to the original design in order for the tank to meet its new intended use as a storage tank for sulfuric acid. The retooling of the tank was integral to the proper functioning of Southern's storage system and it materially enhanced the value of the realty. See *Broadfoot v. Aaron*

15

*Rents, Inc.*, 195 Ga. App. 297, 300 (1) (393 SE2d 39) (1990), aff'd in part, rev'd in part, 260 Ga. 836 (401 SE2d 257) (1991) (Under the *Mullis* standards, statute of repose applied where work done was intended to prolong the life of the brick veneer, to improve the performance of the wall, and to change the original design); *Toole v. Georgia-Pacific, LLC*, No. A10A2179, 2011 WL 7938847, at \*5 (5) (Ga. Ct. App. Jan. 19, 2011) (applying Mullis factors to determine the installation of new insulation and removal of old insulation qualified as an improvement to realty). For these reasons, Appellees' work in converting the storage tank was an improvement to real property within the meaning of OCGA § 9-3-51 (a) and the trial court did not err in granting summary judgment on that issue.

(c) Southern next argues the statue of repose did not apply because its claims do not sound in negligence or construction deficiency, but instead go to a breach of an express promise to renovate the storage tank. We disagree.

> The cardinal rule of statutory construction requires this Court to look diligently for the intention of the General Assembly, and the golden rule of statutory construction requires us to follow the literal language of the statute unless it produces contradiction, absurdity, or such an inconvenience as to insure that the legislature meant something else. Under the rules of statutory construction, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in

16

the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. When a statute's text is clear and unambiguous, this Court will attribute to the statute its plain meaning and the search for statutory meaning will end.

*Principal Lien Svcs., LLC v. Kimex Boat Rock 1183, LLC*, 349 Ga. App. 511, 514-515 (1) (826 SE2d 365) (2019) (citations and punctuation omitted).

The applicable statute of repose in this case provides that "[n]o action to recover damages . . . [f]or any deficiency in the . . . design, . . . or construction of an improvement to real property . . . shall be brought against any person performing or furnishing . . . construction of such an improvement more than eight years after substantial completion of such an improvement." OCGA § 9-3-51 (a). In its fifth amended complaint, Southern contends Appellees breached their promise to guarantee the workmanship and materials used in the renovation of the storage tank and seeks an award of damages on each count of its complaint. Southern's argument is a distinction without difference.

This Court's review of the unambiguous language of the OCGA § 9-3-51 (a) finds that the statute makes no distinction among claims sounding in negligence and those sounding in contract. Whether in tort or in contract, the statute broadly

17

precludes any action to recover damages brought outside the eight year period of repose. It is well settled that "a statute of ultimate repose frames the time period in which a right may accrue, if at all. Therefore, if an injury occurs outside this time period, the injury is not actionable[.]" *Rosenberg v. Falling Water, Inc.*, 289 Ga. 57, 59 (709 SE2d 227) (2011) (citation omitted). It is undisputed that the storage tank was substantially completed by January 2002 and Southern did not initiate this action until January 2012. Consequently, Southern's breach of contract claims against Appellees arising out of the alleged deficiency in Appellees' planning, design, or construction of the storage tank renovation are barred under OCGA § 9-3-51 (a).

4. Southern next argues the trial court erred in ruling as a matter of law that it failed to exercise due diligence in discovering Appellees' alleged fraud. Southern contends the trial court incorporated by reference its "flawed" reasoning from its July 2015 order into its final order. However, this Court in *Southern States II* affirmed the trial court's July 2015 judgment and found no evidence of actual fraud or intent to conceal by Appellees such as would preclude them from asserting the defense of the statute of repose. 338 Ga. App. XXVIII at pg. 17. See also *Brown v. Piggly Wiggly Southern, Inc.*, 228 Ga. App. 629, 629 (1) (493 SE2d 196) (1997) ("The law of the case rule has formally been abolished except as it applies to rulings by one of the

18

appellate courts; they are binding in all subsequent proceedings." (citation and punctuation omitted)).

5. In light of this Court's holding in Division 3 that the statute of repose bars Southern's claims against Appellees, we need not address Southern's remaining enumeration.

*Judgment affirmed. Markle, J., and Hodges, J., concur*.