A07A0723. BBL-McCARTHY, LLC et al. v. BALDWIN PAVING COMPANY et al.

(646 SE2d 682)

BLACKBURN, Presiding Judge.

In this indemnity and insurance coverage action, BBL-McCarthy, LLC ("BBL") and St. Paul Mercury Insurance Company ("St. Paul")[1] appeal the trial court's dismissal of their claims by grant of summary judgment to Baldwin Paving Company ("Baldwin"), Transportation Insurance Company ("TIC") (Baldwin's primary insurer), National Union Fire Insurance Company ("National Union") (Baldwin's excess insurer), Magnum Development, LLC ("Magnum"), and Selective Insurance Company ("Selective") (Magnum's primary and excess insurer). Specifically, BBL and St. Paul argue that the trial court erred in (1) finding that TIC, National Union, and Selective had no duty to defend BBL as an additional insured under their respective insurance policies, (2) finding that TIC, National Union, and Selective had no duty to indemnify BBL as an additional insured, (3) finding that Baldwin and Magnum had no contractual duty to indemnify BBL, and (4) finding that BBL and St. Paul had no right to common law indemnification or contribution against Baldwin and Magnum. For the reasons set forth below, we affirm in part and reverse in part.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of

---

[11] *Morris v. Morris*, 282 Ga. App. 127, 133 (6) (637 SE2d 838) (2006).

[12] *Scott v. State*, 270 Ga. App. 292, 295 (2) (606 SE2d 312) (2004).

[1] St. Paul appeals individually and as the subrogee of BBL and of the owners of the property.

law. OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*[2] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Phillips v. First Bank of Ga.*[3]

So construed, the record shows that the owners of property in north Fulton County sought to develop an office park construction project to be known as Parsons Meadow. Pursuant to a design/build contract, the owners hired BBL as general contractor for the project. Under this contract, BBL was responsible for design and construction of the project and was required to obtain comprehensive general liability insurance coverage. To fulfill this obligation, BBL purchased an insurance policy from St. Paul.

BBL, in turn, subcontracted with Baldwin and Magnum separately to construct a traffic "deceleration lane" leading from Medlock Bridge Road to the construction project driveway. Specifically, Magnum was hired to perform the grading work on the deceleration lane, and Baldwin was hired to perform the paving work. Both subcontracts contained identical insurance provisions, which provided:

> The Subcontractor shall purchase from and maintain in a company or companies licensed to do business in the jurisdiction in which the Project is located such insurance as will protect BBL-McCarthy, LLC, the Owner, and their agents from claims which may arise out of or result from the Subcontractor's operations under this AGREEMENT, and for which BBL-McCarthy, LLC, the Owners, as per 1.4 of this agreement and their agents may be held liable, whether such operations be by the Owner, BBL-McCarthy, Subcontractor or by anyone directly or indirectly employed by them or subcontracted with or by anyone for whose acts any of them may be liable. Annexed hereto as Exhibit 5 is a schedule of the kinds of insurance and minimum amounts required to be purchased and maintained by Subcontractor throughout its work on the Project.

The subcontracts also required that BBL and the owners be named as additional insureds on the subcontractors' policies. In addition, the subcontracts contained an indemnification provision, which in part provided:

---

[2] *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843 (575 SE2d 732) (2002).
[3] *Phillips v. First Bank of Ga.*, 257 Ga. App. 342 (571 SE2d 410) (2002).

> To the fullest extent permitted by law, the Subcontractor shall defend, indemnify, and hold harmless BBL-McCarthy, the Owner, and their respective agents from and against any and all claims, actions, and liabilities arising out of the performance of the Subcontractor's work, or the acts or omissions of the Subcontractor's employees, agents, or representatives including sub-Subcontractors, or by reason of liability imposed by operation of law, for bodily injury . . . , illness, or death sustained by any person regardless of whether such claim, action, or liability is caused in part by a party indemnified hereunder.

To comply with their obligations under the subcontracts, Baldwin purchased a $1 million primary CGL policy from TIC and a $20 million umbrella policy from National Union. Magnum purchased a $1 million primary CGL policy and a $1 million umbrella policy from Selective. Both of the subcontractors' primary policies named BBL as an additional insured.

On June 29, 2000, two automobiles were involved in a serious accident on Medlock Bridge Road, near the Parsons Meadow construction project. A vehicle driven by Thomas Siragusa collided with a vehicle driven by Bryan Cardarelli. Cardarelli was seriously injured. Siragusa and his three passengers were killed. Cardarelli and the decedents' representatives ("plaintiffs") filed five separate, but nearly identical, lawsuits ("underlying actions") against the owners, BBL, Baldwin, and Magnum, alleging that the deceleration lane leading into the construction project was constructed in a manner that allowed water to pool on the road. When Siragusa's vehicle hit the pooled water, Siragusa lost control, crossed over the median, and struck Cardarelli's vehicle, which was traveling in the opposite direction. In their lawsuits, the plaintiffs alleged that the owners and BBL negligently managed the project, and that BBL, Baldwin, and Magnum negligently constructed the deceleration lane.

By April 2004, all of the underlying actions were settled. All of the parties entered into a collective settlement with Cardarelli. However, BBL and the owners entered into settlement agreements with the decedents' representatives separately from Baldwin and Magnum, who in turn also entered into their own separate settlements with those plaintiffs. BBL's and the owners' settlements of the four remaining claims were funded by BBL's insurer St. Paul. Additionally, the releases between BBL, the owners, and the four remaining plaintiffs specifically indicated that BBL and the owners were settling the claims alleging that they negligently managed or supervised the project.

In October 2004, BBL and St. Paul filed this action against the subcontractors and their insurers to recover the defense costs incurred and settlement payments made by St. Paul in the underlying actions. In their complaint, BBL and St. Paul alleged that the subcontractors' insurers breached their duties to defend and to indemnify BBL as an additional insured in the underlying actions, that the subcontractors breached their duties to provide contractual indemnification to BBL, and that the subcontractors are liable to BBL under common law contribution and indemnity theories. BBL and St. Paul filed a motion for partial summary judgment as to TIC's and Selective's duty to defend. Baldwin filed a motion for summary judgment as to BBL's claims for contractual and common law indemnity. In addition, Selective and National Union filed motions for summary judgment as to their alleged duties to defend and indemnify. The trial court held a hearing on the motions, after which it denied BBL's and St. Paul's motion for partial summary judgment and granted the other parties' motions for summary judgment. In doing so, the trial court dismissed all of BBL's and St. Paul's claims. This appeal followed.

1. BBL and St. Paul contend that the trial court erred in finding that insurers TIC and Selective had no duty to defend BBL and the owners as additional insureds in the underlying actions. We agree.

(a) "An insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured." *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*[4] "Construction of an insurance policy is governed by the ordinary rules of contract construction, and when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent." (Punctuation omitted.) *Scottsdale Ins. Co. v. Great American Assurance Co.*[5] "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *City of Atlanta*, supra, 231 Ga. App. at 207. Indeed, "[t]o excuse the duty to defend the petition must unambiguously exclude coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy. Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in

---

[4] *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 231 Ga. App. 206, 207 (498 SE2d 782) (1998).

[5] *Scottsdale Ins. Co. v. Great American Assurance Co.*, 271 Ga. App. 695, 696 (1) (610 SE2d 558) (2005).

favor of the insured." (Punctuation omitted.) *Penn-America Ins. Co. v. Disabled American Veterans.*[6]

Magnum's insurer, Selective, issued an endorsement to the primary CGL policy, which listed BBL and the owners as additional insureds. In addition, that endorsement provided: "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you." The primary CGL policy issued to Baldwin by its insurer, TIC, included an additional insured endorsement, which provided:

A. WHO IS INSURED (Section II) is amended to include as an insured any person or organization (called additional insured) whom you are required to add as an additional insured on this policy under: 1. A written contract or agreement; . . .

B. The insurance provided to the additional insured is limited as follows: 1. That person or organization is only an additional insured with respect to liability arising out of: a. Your premises; b. "Your work" for that additional insured; or c. Acts or omissions of the additional insured in connection with the general supervision of "your work."

Within the context of an insurance policy, we have previously construed the phrase "arising out of your operations" and "arising out of your work" as meaning arising out of a "business transaction," or work performed by the insured. See *Ryder Integrated Logistics v. BellSouth Telecommunications.*[7] We have also similarly construed "arising out of" as meaning "had its origins in," "grew out of," or "flowed from." *Abercrombie v. Ga. Farm &c. Ins. Co.*[8] Moreover, we have also held that the "term 'arising out of' does not mean proximate cause in the strict legal sense, nor require a finding that the injury was directly and proximately caused by [the insured's actions]." (Punctuation omitted.) Id. at 604. "Almost any causal connection or relationship will do." (Punctuation omitted.) Id. See *Southeastern Fidelity Ins. Co. v. Stevens.*[9] In fact, where "the insurer grants

---

[6] *Penn-America Ins. Co. v. Disabled American Veterans*, 268 Ga. 564, 565-566 (490 SE2d 374) (1997).

[7] *Ryder Integrated Logistics v. BellSouth Telecommunications*, 277 Ga. App. 679, 684 (3) (627 SE2d 358) (2006), rev'd in part on other grounds, 281 Ga. 736 (642 SE2d 695) (2007).

[8] *Abercrombie v. Ga. Farm &c. Ins. Co.*, 216 Ga. App. 602, 603 (454 SE2d 813) (1995).

[9] *Southeastern Fidelity Ins. Co. v. Stevens*, 142 Ga. App. 562, 563 (1) (236 SE2d 550) (1977).

coverage for liability 'arising out of' the named insured's work, the additional insured is covered without regard to whether the injury was attributable to the named insured or the additional insured." *Ryder Integrated Logistics*, supra, 277 Ga. App. at 685 (3).

Here, all of the complaints in the underlying actions alleged that the accident occurred because BBL negligently supervised the construction of the deceleration zone and further alleged that it also occurred because BBL, Magnum, and Baldwin negligently constructed the deceleration zone. Given these allegations and given the "arising out of" language contained in both Baldwin's and Magnum's CGL policies, BBL and the owners are additional insureds and both TIC and Selective had a duty to defend BBL and the owners regardless of whether the underlying plaintiffs' claims were attributable to BBL or the subcontractors. See *Ryder Integrated Logistics*, supra, 277 Ga. App. at 685 (3).

(b) TIC argues that it had no duty to defend the owners as additional insureds because the owners failed to adequately elect coverage. Similarly, Selective argues that it had no duty to defend either BBL or the owners because neither adequately elected coverage as additional insureds. Where a defendant is entitled to be an additional insured under an insurance policy, the defendant must elect coverage by forwarding a copy of the complaint to the insurer. *Hicks v. Continental Ins. Co.*[10] However, neither TIC nor Selective contend that they were without notice of the underlying plaintiffs' actions, and neither insurer has demonstrated that they were prejudiced by any alleged lateness of BBL's or the owners' election of coverage. See *Leventhal v. American Bankers Ins. Co. of Fla.*[11] Thus, TIC and Selective are not entitled to summary judgment as to their duty to defend based on any alleged lack of notice.

(c) TIC further argues that it had no duty to defend because it tendered the remaining amount of liability coverage to Baldwin's excess insurer National Union and thus exhausted its policy limits. This argument is without merit. The term "exhaust" as it applies to policy limits means the payment either of a settlement or of a judgment, which wholly depletes the policy amount. *Anderson v. U. S. Fidelity &c. Co.*[12] Here, TIC concedes that it did not "exhaust" its policy limits by paying the entirety toward either a judgment or

---

[10] *Hicks v. Continental Ins. Co.*, 146 Ga. App. 124, 125 (245 SE2d 482) (1978).

[11] *Leventhal v. American Bankers Ins. Co. of Fla.*, 159 Ga. App. 104, 108 (4) (283 SE2d 3) (1981).

[12] *Anderson v. U. S. Fidelity &c. Co.*, 177 Ga. App. 520, 521 (339 SE2d 660) (1986).

settlement. Thus, TIC's tender of the remaining liability coverage to National Union did not extinguish its duty to defend.

(d) Additionally, although BBL's and St. Paul's enumeration of error with regard to this issue refers generally to all insurers, their argument is limited to a discussion of TIC's and Selective's policies. BBL's and St. Paul's argument does not address whether the trial court erred in finding that National Union had no duty to defend BBL and the owners as additional insureds. Thus, BBL and St. Paul have waived this issue on appeal. See *Kaylor v. Atwell;*[13] *John Crane, Inc. v. Wommack.*[14]

Accordingly, the trial court erred in dismissing BBL's and St. Paul's claim that TIC and Selective had a duty to defend BBL as an additional insured and further erred in denying summary judgment to BBL and St. Paul as to that issue. However, questions of fact remain as to whether BBL and the owners adequately elected coverage under TIC's and Selective's primary policies. Furthermore, BBL and St. Paul's contention that National Union also had a duty to defend has been waived on appeal.

2. BBL and St. Paul contend that the trial court erred in finding that insurers TIC, Selective, and National Union had no duty to indemnify BBL and the owners as additional insureds. In a separate enumeration of error, BBL and St. Paul similarly contend that the trial court also erred in finding that Baldwin and Magnum did not have a duty to indemnify BBL and the owners under the subcontracts. We agree.

"As a matter of law, the scope of the written indemnification provisions must be strictly construed against [BBL], the indemnitee." *The Svc. Merchandise Co. v. Hunter Fan Co.*[15] In addition, "it is well established in Georgia that contractual indemnities do not extend to losses caused by an indemnitee's own negligence unless the contract expressly states that the negligence of the indemnitee is covered." (Punctuation omitted.) *Allstate Ins. Co. v. City of Atlanta.*[16]

The indemnification clause in BBL's subcontracts with Baldwin and Magnum provides that the Subcontractor shall indemnify BBL and the owners against any and all claims arising out of the performance of the Subcontractor's work regardless of whether such claim "is caused *in part by an indemnitee.*" (Emphasis supplied.) Similar to our interpretation of the phrase "arising out of" in insurance policies, we construe this phrase in an indemnity clause to mean "had its

---

[13] *Kaylor v. Atwell,* 251 Ga. App. 270, 274 (2) (c) (553 SE2d 868) (2001).

[14] *John Crane, Inc. v. Wommack,* 227 Ga. App. 538 (1) (489 SE2d 527) (1997).

[15] *The Svc. Merchandise Co. v. Hunter Fan Co.,* 274 Ga. App. 290, 296 (1) (617 SE2d 235) (2005).

[16] *Allstate Ins. Co. v. City of Atlanta,* 202 Ga. App. 692, 693 (415 SE2d 308) (1992).

origins in" or "grew out of" and to encompass "almost any causal connection or relationship." See *Abercrombie*, supra, 216 Ga. App. at 604. Even focusing specifically on the claims that BBL settled leads to the same conclusion, as our Supreme Court has held that "arising out of" as a contractual term includes claims of negligent supervision. *Continental Cas. Co. v. HSI Financial Svcs.*[17] As the Supreme Court reasoned, the genesis of negligent supervision claims quite logically stems from any primarily alleged culpable conduct. Id.; *Jefferson Ins. Co. of New York v. Dunn*.[18] Thus, the claims at issue here clearly arose out of the subcontractors' work on this project regardless of any specific division of fault between them and BBL. Furthermore, BBL specifically contracted for indemnification on even those claims, such as those at issue here, for which it may have been partially responsible with the subcontractors as a joint tortfeasor. See *Seaboard Coast Line R. Co. v. Dockery*.[19]

However, St. Paul has no right to indemnification as a subrogee with regard to the settlements with Siragusa's passengers because it did not make the settlement payments to those underlying plaintiffs as the insurer under BBL's insurance policy but rather did so as an independent contractor. According to "OCGA § 33-7-12 (a), a provision which permits the insurer to compromise claims or defenses of the insured without his consent *'shall be deemed to create . . . the relationship of an independent contractor.'* " (Emphasis in original.) *Carden v. Burckhalter*.[20] The designation in OCGA § 33-7-12 (a) of St. Paul as an "independent contractor" establishes as a matter of law that its settlement payments to the underlying plaintiffs made without BBL's or the owners' consent was not made as their insurer under their policy. See id. Indeed, St. Paul cannot contend that it paid the underlying plaintiffs under BBL's insurance policy given the fact that the passengers' settlements all specifically indicate that St. Paul is acting as an independent contractor, and that BBL and the owners have not consented to the payments. Therefore, St. Paul, as subrogee under BBL's insurance policy, has no right to recover indemnification for its settlement payments to the passenger plaintiffs. See id. Furthermore, given the fact that St. Paul funded these settlements and neither BBL nor the owners made any payments, neither BBL nor the owners can maintain an independent indemnification claim in this matter. See id. at 489 (2) (a). See also *Southern Guaranty Ins.*

---

[17] *Continental Cas. Co. v. HSI Financial Svcs.*, 266 Ga. 260, 262 (466 SE2d 4) (1996).

[18] *Jefferson Ins. Co. of New York v. Dunn*, 269 Ga. 213, 216 (496 SE2d 696) (1998).

[19] *Seaboard Coast Line R. Co. v. Dockery*, 135 Ga. App. 540 (218 SE2d 263) (1975).

[20] *Carden v. Burckhalter*, 214 Ga. App. 487, 489 (2) (b) (448 SE2d 251) (1994).

*Co. v. Ragan Ins. Agency.*[21] The Siragusa settlement, however, does not indicate that St. Paul acted as an independent contractor or that BBL and the owners did not consent to the settlement. Therefore, our analysis of the effect of OCGA § 33-7-12 is not applicable to that settlement.

Accordingly, the trial court erred in dismissing BBL's and St. Paul's indemnification claim for the payment on the Siragusa claim but did not err, albeit for different reasons, in dismissing those claims as to the passenger settlements.

3. In light of our ruling in Division 2, BBL's and St. Paul's contention that the trial court erred in finding that they had no common law right to indemnification or contribution from Baldwin and Magnum is moot.

In summary, we reverse the trial court's ruling to the extent it dismissed BBL's and St. Paul's claim that TIC and Selective had a duty to defend BBL and the owners as additional insureds. We also reverse the trial court's ruling to the extent it denied BBL's and St. Paul's partial motion for summary judgment on that same issue, but we note that questions of fact remain as to whether BBL and the owners adequately elected coverage. We affirm the trial court's ruling to the extent it granted National Union's motion for summary judgment as to its duty to defend.

Furthermore, albeit for different reasons, we affirm the trial court's ruling dismissing BBL's and St. Paul's indemnification claims as to the settlement payments made to the passenger plaintiffs. However, we reverse the grant of summary judgment dismissing BBL's and St. Paul's indemnification claim as to the settlement payment made to the Siragusa plaintiff.

*Judgment affirmed in part and reversed in part. Ruffin and Miller, JJ., concur.*

ON MOTION FOR RECONSIDERATION.

On motion for reconsideration, BBL and St. Paul request that we revisit our ruling that they have no right to indemnification with regard to the settlements with Siragusa's passengers. In a separate motion, Selective requests that we reconsider our ruling that questions of fact remain as to election of coverage issues and further notes that while we ruled that BBL and St. Paul have no right to indemnification with regard to the passengers' settlements, we did not

---

[21] *Southern Guaranty Ins. Co. v. Ragan Ins. Agency*, 212 Ga. App. 690, 694 (4) (442 SE2d 871) (1994).

expressly address whether they could be indemnified for the Cardarelli settlement. The global release for the Cardarelli matter provides that: "[t]he undersigned hereby acknowledge prior receipt of a copy of this Release and that it is notice in writing of the lack of consent of the party or parties hereby released and that said party and parties are not precluded from further assertion of claims against the undersigned by others by virtue of this Release." Thus, under *Carden*, supra, 214 Ga. App. at 489 (2) (b), St. Paul's settlement payment here was made as an independent contractor and without BBL's or the owners' consent. Accordingly, for the sake of clarification and for the same reasons discussed in Division 2, BBL and St. Paul may not seek indemnification for the Cardarelli settlement. Both motions for reconsideration are otherwise denied.

DECIDED APRIL 10, 2007 —
RECONSIDERATIONS DENIED MAY 23, 2007 — 

*Freeman, Mathis & Gary, Philip W. Savrin, Magill & Atkinson, David M. Atkinson, Roger D. Martin*, for appellants.

*Gray, Hedrick & Edenfield, William E. Gray II, Sommers, Scrudder & Bass, Henry E. Scrudder, Jr., Teddy L. Sutherland, Brennan, Harris & Rominger, Edward R. Stabell III, Weinberg, Wheeler, Hudgins, Gunn & Dial, Allison M. Richardson, Y. Kevin Williams, Christopher T. Byrd, Carlock, Copeland Semler & Stair, Shannon M. Sprinkle, David F. Root*, for appellees.