**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J, and REESE, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 2, 2017**

# In the Court of Appeals of Georgia

A17A0485. FAYETTE COUNTY NURSING HOME, LLC v. PRI   DO-019
    X-RAY, LLC et al.

DOYLE, Chief Judge.

This appeal arises from a breach of contract case filed by Fayette County Nursing Home, LLC, d/b/a Southland Health & Rehabilitation & Clinical Health Services (collectively "Southland") against PRI X-Ray, LLC, and Georgia Ultrasound, LLC, (collectively "PRI") alleging PRI failed to defend and indemnify Southland as required under the parties' service contract against claims filed in connection with the death of Lois Jorgenson. The trial court granted summary judgment to PRI after finding that the claims alleged against Southland in Jorgenson's death did not fall under the indemnity provision of the service contract between the

parties. For the reasons that follow, we reverse the trial court's order granting summary judgment to PRI.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that Southland is a long-term nursing facility, which provides residence, skilled care, treatment, and convalescent and rehabilitative services. In 2011, Southland contracted PRI to perform various x-ray services at the facility. The agreement between the parties contains the following relevant clauses. All employees of PRI would be appropriately trained, follow pertinent regulations, and "uphold the ethics of the profession." All exams, including mobile x-ray, ultrasound, and EKG services, performed by PRI would be "on the order of a duly licensed and authorized physician" and would be "interpreted by a duly licensed and

---

[1] (Citations omitted.) *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494-495 (646 SE2d 682) (2007), citing OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843 (575 SE2d 732) (2002); *Phillips v. First Bank of Ga.*, 257 Ga. App. 342 (571 SE2d 410) (2002).

qualified [r]adiologist." Under services, PRI would "provide [Southland] with true and accurate records of services provided for and inspection of charts, if necessary, to assure compliance with physician orders and any and all state, federal, and/or fiscal intermediary rules and regulations as they apply to mobile ultrasound services." PRI was also required to utilize licensed radiologists and cardiologists to interpret the exams, and the contract noted that "[t]he [r]adiologist will dictate a report for each examination and will promptly fax the full written report to [Southland]." Clause 5, titled "Insurance," stated the amount of insurance each party was required to maintain.

Section 12 of the agreement covers "Indemnification and Cooperation In Defense of Claims." Clause 12.1 states that

> PRI . . . covenants and agrees to fully defend, protect, indemnify[,] and hold harmless [Southland], its officers, directors, agents, trustees, heirs, employees, servants, affiliated organizations, subsidiaries, successors, assigns[,] and representatives against each and every claim, worker's compensation claim, lien, demand[,] or cause of action and any liability, costs, payment of benefits, expenses (including reasonable attorney fees and expenses) damage[,] or loss or connection therewith that may be made or asserted by any third parties, additional subcontractors hired by PRI [,]. . . or employees of PRI . . . , including additional subcontrators and their employees as contemplated by OCGA § 34-9-8 on account of

3

personal injury, death, property damage[,] or worker's compensation claim ***caused by, arising out of or in any way incidental to, or in connection with the independent contractor relationship between PRI . . . and [Southland] or in the performance of laboratory services hereunder***; and PRI . . . agrees that it maintains, at PRI['s] . . . sole cost and control, valid, ongoing workers' compensation coverage for PRI . . . for PRI . . . and all PRI['s] . . . employees, subcontractors[,] and subcontractor's employees throughout the length of time it takes PRI . . . to perform the work or radiology services and to provide a valid ongoing certificate of worker's compensation insurance to [Southland].[2]

Clause 12.2 more fully articulated the reimbursement mechanism from PRI to Southland for workers' compensation claims, and Clause 12.3 defined the cooperation practices between the parties to defense of medical malpractice or other claims.

In 2013, Jorgenson broke her hip and underwent reparative surgery. Jorgenson did not experience complications from surgery while at the hospital, and on May 22, 2013, she was discharged and sent to Southland for a 30-day rehabilitation stay. When Jorgenson was admitted to Southland, it was noted that she had a bowel movement on May 21, 2013, and she had a soft, flat, non-tender, abdomen that was

---

[2] (Emphasis supplied.)

positive for bowel sounds. Southland's records indicated that between May 25-29, Jorgenson did not have a bowel movement, was given a laxative without results, and began experiencing degrading function during rehabilitation exercises. On May 30, after Jorgenson received additional treatment but continued to deteriorate, Jorgenson's treating physician ordered a chest x-ray and a kidney, ureter, and bladder ("KUB") x-ray to rule out an obstruction.

The KUB and chest x-rays were performed at 8:30 p.m. by PRI, and the films were evaluated and interpreted by Dr. Farah Williams. Dr. Williams dictated her findings, and they were faxed to Southland by 12:03 a.m. Dr. Williams's practice also contacted PRI directly and informed it of a "critical finding" in Jorgenson's x-ray and expressed that Jorgenson's treating physician needed to know about the finding immediately. Neither PRI, nor Dr. Williams, or her practice directly contacted Southland or Jorgenson's treating physician about the finding in the x-rays in order to notify them of the critical finding.

At 12:03 a.m., a Southland nurse noted that she contacted via answering service Jorgenson's treating physician, but the complaint failed to state whether the treating physician received the x-ray information until making rounds later that morning at 11:30 a.m., when she requested Jorgenson be transferred to the hospital

to rule out a bowel perforation. Jorgenson underwent surgery for the perforation and later died from sepsis.

Jorgenson's estate filed a complaint against various parties, including Southland, Williams, and Williams's practice, but not naming PRI as a defendant. The complaint alleged, inter alia, that Williams's practice contacted PRI and informed it that the KUB had a critical finding about which the treating physician should be immediately informed. The report allegedly was sent to Southland from Williams's practice, but neither William nor her practice contacted Southland or the treating physician to inform them of the critical finding; although PRI knew of the critical finding and contacted Southland to ensure the report arrived, it did not explain to Southland that there was a critical finding in the report or explain that the treating physician should be immediately informed. The treating physician moved Jorgenson to the hospital for treatment some 12 hours later. Based on these facts, Jorgenson alleged claims of negligence, professional negligence, breach of contract, and wrongful death.

Southland notified PRI of Jorgenson's lawsuit, but PRI refused to indemnify Southland against Jorgenson's claims. Thereafter, Southland settled with Jorgenson,

and Southland filed the instant case against PRI for breach of contract based on the failure to defend and indemnify Southland under the agreement.

The parties filed cross-motions for summary judgment. The trial court granted summary judgment in favor of PRI, finding that PRI contracted with Southland to provide mobile imaging services, not radiology services, and therefore, Jorgenson's injury did not arise out of a breach of PRI's duties under the contract, which resulted in a failure to trigger the duties to defend or indemnify Southland under the agreement.

Southland argues that the trial court erred by granting summary judgment to PRI. We agree.

> As a matter of law, the scope of the written indemnification provisions must be strictly construed against [Southland], the indemnitee. In addition, it is well established in Georgia that contractual indemnities do not extend to losses caused by an indemnitee's own negligence unless the contract expressly states that the negligence of the indemnitee is covered.[3]

---

[3] (Citations, footnotes, and punctuation omitted.) *BBL-McCarthy*, 285 Ga. App. at 500 (2).

Specifically, Southland challenges the trial court's conclusion that Southland failed to show that PRI's actions proximately caused the patient's injuries in order to trigger the indemnity clause. In support of its argument, Southland relies primarily on *JNJ Foundation Specialists, Inc. v. D. R. Horton, Inc.*[4] Although that case is not binding precedent, the propositions within that case upon which Southland relies are based upon prior case law in this Court, including *BBL-McCarthy*, in which this Court explained that "[s]imilar to our interpretation of the phrase 'arising out of' in insurance policies, we construe this phrase in an indemnity clause to mean 'had its origins in' or 'grew out of' and to encompass 'almost any causal connection or relationship.'"[5] Thus, despite the trial court's determination otherwise, in this case, the origination of at least some of the claims against Southland arguably arose from PRI's communication between Southland and the radiologist PRI contracted to interpret the films as required in Clause 1.7. Additionally, PRI contracted to "use" certified radiologists under both Clause 1.2 and Clause 1.7. Based on the broad language of the indemnity clause of 12.1, PRI was responsible for providing indemnity for all claims "caused by, arising out of or in any way incidental to, or in

---

[4] 311 Ga. App. 269 (717 SE2d 219) (2011) (physical precedent only).

[5] 285 Ga. App. at 500-501 (2).

8

connection with the independent contractor relationship between PRI . . . and [Southland] or in the performance of laboratory services hereunder."[6] This broad language encompasses the communication between the radiologist and Southland because PRI was responsible for acting as an intermediary between the radiologist and Southland under the contract. The radiologist's communication to Southland, especially when the radiologist's concern was known to PRI, is "incidental to" PRI's duties under the contract.[7]

Moreover, PRI specifically contracted to provide consultation to Southland regarding "ancillary health matters and inspection of charts, if necessary, to assure compliance with physician orders,"[8] and its employees were required to be trained to uphold ethical obligations of the profession.[9] The contractual obligation of "consultation with Southland . . . to ensure compliance with orders" is not limited to the time period prior to the x-ray or ultrasound. When read in conjunction with the

---

[6] See id. at 501 (2).

[7] See id.; *JNJ Foundation Specialists, Inc.*, 311 Ga. App. at 279-280 (4) (physical precedent only).

[8] Clause 1.6.

[9] Clause 1.4.

9

broad duty to indemnify[10] Southland in connection with the services under the

contract, Jorgenson's claims are included, and PRI breached the indemnity agreement

by failing to provide a defense.[11] Accordingly, we reverse the grant of summary

judgment to PRI.

*Judgment reversed. Miller, P. J., and Reese, J., concur.*

---

[10] PRI agreed to "fully . . . indemnify and hold harmless . . . against each and every claim . . . or cause of action and any liability, costs, payment of benefits, expenses (including reasonable attorney fees and expenses), damage[,] or loss or connection therewith that may be made or asserted by any third parties, . . . on account of personal injury, death, property damage[,] or worker's compensation claim caused by, arising out of or in any way incidental to, or in connection with the independent contractor relationship between PRI . . . and [Southland] . . . ."

[11] See *Lawyers Title Ins. Corp. v. New Freedom Mtg. Corp.*, 285 Ga. App. 22, 30 (2) (645 SE2d 536) (2007) (explaining that if "as here, an indemnification clause requires indemnification of losses that arise out of certain specified events but does not explicitly mention the indemnitee's negligence, the clause still requires full indemnification although the indemnitee's negligence may have partially caused the loss") (punctuation omitted).