**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 25-10837

Non-Argument Calendar

_____

MEDMARC CASUALTY INSURANCE COMPANY,

*Plaintiff-Appellant,*

*versus*

FELLOWS LABRIOLA LLP,
STEVEN M. KUSHNER,
ZANKHANA PATEL,
PNP AMUSEMENT GAMES LLC,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:24-cv-02205-LMM

_____

Before ROSENBAUM, NEWSOM, and TJOFLAT, Circuit Judges.

PER CURIAM:

Medmarc Casualty Insurance Company sought a declaration that it has no insurance obligations to Fellows LaBriola, LLP, and Steven Kushner, an attorney at Fellows, related to a malpractice lawsuit brought by Zankhana Patel and PNP Amusement Games, LLC. The District Court dismissed Medmarc's complaint, and Medmarc appeals. We affirm.

## I.

The state of Georgia filed a RICO and civil forfeiture action against Zankhana; her company, PNP[1]; her then-spouse, Manoj Patel; his company, Krishna Amusement, Inc.[2]; and others in July 2019. The District Court granted a seizure warrant, freezing the defendants' assets and bank accounts. Fellows and Kushner represented the defendants in the RICO case. A malpractice suit followed, and the following facts are alleged in the malpractice complaint.

The defendants executed a single fee agreement for representation in the RICO case, and Kushner was designated as the principal attorney for the matter. The fee contract signed by Zankhana did not reference conflicts of interest, and no one advised Zankhana or PNP of the potential conflicts of interest associated with the joint representation. The case settled, and the consent order directed a receiver to distribute cash from the

---

[1] Zankhana is the manager and sole owner of PNP.

[2] Zankhana has no ownership or stock interests in Krishna.

companies' bank accounts to Fellows's IOLTA account, for distribution to the respective companies, and to auction off some of the defendants' assets. The receiver provided the distributions via checks, which were deposited into Fellows's IOLTA account. Fellows and Kushner then, without informing or receiving authorization from Zankhana or PNP, distributed funds owned by PNP into an account that was owned by Krishna and that listed Manoj as the beneficiary. The receiver also sold assets from the various defendants in a joint auction and distributed the proceeds to Fellows's IOLTA account. Fellows and Kushner, again without informing or receiving authorization from Zankhana or PNP, wired the proceeds from the auction to the Krishna account. Manoj subsequently filed for divorce from Zankhana, after which Fellows wired more money to the Krishna account. Neither Zankhana nor PNP received any funds from the receiver or proceeds from the auction. Fellows and Kushner also gave Manoj various assets owned by Zankhana, including a BMW and jewelry. Zankhana and PNP sued Fellows and Kushner for legal malpractice, breach of fiduciary duty, breach of contract, punitive damages, and attorneys' fees and expenses based on the issues with the disbursements and conflicts of interest.

Medmarc issued a Lawyers Professional Liability Insurance Policy to Fellows for February 8, 2021, to February 8, 2022. Kushner is an insured under the policy. The policy provides that Medmarc must defend "any suit or arbitration seeking damages against the **Insured** to which the **policy** applies." It also states in the "When a Claim is First Made" section that "[a]ll **claims** . . .

involving a single act, error, or omission or a series of related acts, errors, or omissions shall be deemed to be one **claim** and to be first made when the first of such **claims** is made." Coverage does not apply to any claims that fall under the policy's misappropriation exclusion, which are "any **claim**[s] or other request[s] involving or relating to any conversion, improper commingling, or misappropriation, whether by an **Insured** or any other person, and whether intentionally or not, of client funds or trust account funds or funds of any other person held by any **Insured** in any capacity."

Medmarc filed a complaint for declaratory judgment on May 20, 2024, seeking a declaration that it owes no coverage obligations, specifically that it owes no duty to defend and no duty to indemnify, to Fellows or Kushner in the malpractice lawsuit. Fellows and Kushner moved to dismiss the complaint, arguing that Medmarc had a duty to defend and that the question regarding the duty to indemnify was not ripe. The District Court granted the motion and dismissed the action. Medmarc timely appeals.

## II.

We review de novo both "the grant of a motion to dismiss . . . for failure to state a claim upon which relief can be granted," *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009), and "the dismissal of a complaint for lack of jurisdiction . . . , including for . . . lack of ripeness." *Baughcum v. Jackson*, 92 F.4th 1024, 1030 (11th Cir. 2024) (citation omitted). Medmarc appeals the District Court's dismissal of its duty-to-defend claim and its duty-to-indemnify claim. We discuss both in turn.

## A.

Under Georgia law, ordinary rules of contract construction govern the interpretation of insurance policies, and "[i]f the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 497 (2007). Further, any doubt as to whether coverage, and thus the duty to defend, exists "should be resolved in favor of the insured." *Id.* at 497-98; *see also Auto Owners Ins. Co. v. Neisler*, 334 Ga. App. 284, 287 (2015) ("[W]hen a term of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured."). "This principle is especially true with respect to exclusions from coverage sought to be invoked by the insurer." *Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367, 1377 (N.D. Ga. 2009); *see also Wilkinson v. Georgia Farm Bureau Mut. Ins. Co.*, 351 Ga. App. 891, 893 (2019) ("[E]xceptions and exclusions to coverage must be narrowly and strictly construed against the insurer and forgivingly construed in favor of the insured to afford coverage."). As such, the insurer must defend the lawsuit unless the complaint is "unambiguously exclude[d]" from the policy, *BBL-McCarthy, LLC*, 285 Ga. App. at 497, and "does not assert any claims upon which there would be insurance coverage." *Nationwide Mut. Fire Ins. Co. v. Somers*, 264 Ga. App. 421, 424 (2003).

On appeal, Medmarc argues that it does not have a duty to defend because the entire suit against Fellows and Kushner

contains one claim and that one claim falls under the misappropriation exclusion in the policy. It bases this argument on the language in the "When a Claim is First Made" section that "[a]ll **claims** . . . shall be deemed to be one **claim**[.]" At the outset, the defendants note that Medmarc did not make this argument to the District Court, but instead argued that all "claims" in the complaint "relate to and involve conversion, improper commingling, or misappropriation," so they all fall under the misappropriation exclusion. Medmarc maintains that it did make the "one claim" argument below because the meaning of "claim" is necessarily part of the argument that the exclusion bars coverage for claims that fall under the misappropriation exclusion. We agree with the defendants. In the District Court, Medmarc focused on the language of the exclusion provision, not the "claim" definition; the words "one claim" do not even appear in its opposition to the defendants' motion to dismiss. Medmarc did not make the "one claim" argument below.

To the extent that the argument needs to be considered now,[3] it is still unpersuasive. "Claim" is defined in the definition section,[4] and the sentence that Medmarc looks to now for the "one claim" argument is in the "When a Claim is Made" section.

---

[3] Medmarc maintains that the policy, with the "claim" definition, was included in the original complaint and that the District Court was required to consider the meaning of the term in ruling on the motion to dismiss.

[4] In the policy, "**Claim** means a demand or suit for **damages** received by the **Insured**, including any arbitration proceedings to which the **Insured** is required to submit or to which the **Insured** has submitted with the **Company's** consent."

Further, the full sentence in which the "one claim" phrase sits reads as "[a]ll claims . . . involving a single act error, or omission or a series of related acts, errors, or omissions shall be deemed to be one claim and to be first made when the first of such claims is made." Thus, an insured would expect that the sentence in question impacts only when a claim is first made and would not expect it to inform the meaning of "claim" beyond that. We must read the sentence that way too as insurance contracts "are to be read in accordance with the reasonable expectations of the insured where possible." *Boardman Petroleum, Inc. v. Federated Mut. Ins.*, 269 Ga. 326, 328 (1998). And, of course, if there is remaining doubt, we must interpret it against the insurer as the drafter of the contract. There are multiple claims in this suit.

And, of those multiple claims, at least some fall outside the misappropriation exclusion[5]—that is, some fall within the policy's coverage. Specifically, the conflict-of-interest allegations—which include that Kushner agreed to "represent multiple defendants in a RICO/forfeiture proceeding without initially recognizing the potential conflicts among the clients," failed to "advise the clients of those potential conflicts," and failed to seek a waiver of the conflicts or withdraw from the representation—have nothing to do with

---

[5] Fellows and Kushner argue that all claims in this suit fall outside the misappropriation exclusion. Because Medmarc must defend the entire suit if even one claim is covered by the policy, we need not decide whether each claim is specifically covered.

misappropriation, conversion, or improper commingling and, thus, fall outside the misappropriation exclusion.

Medmarc argues that they do fall under the exclusion, maintaining that they "involve[e] or relat[e] to" misappropriation, conversion, or improper commingling because they "are all asserted in the same suit and involve the same attorney, law firm, and clients." But that is not enough. We must not read phrases like "relate to" so that they "extend to the furthest stretch of [their] indeterminacy, . . . for really, universally, relations stop nowhere." *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S. Ct. 1671, 1677 (1995) (citation and internal quotation omitted) (alteration adopted). We make no holding with regard to where that line ultimately lies, but it surely cannot be where claims simply involve the same parties and are brought in the same lawsuit. As such, the conflict of interest claims here do not fall under the misappropriation exclusion and are, thus, covered by the policy.[6] Medmarc must defend the entire suit.

## B.

Courts are limited to deciding cases or controversies, which requires the issues presented to be, among other things, ripe for adjudication. *Trump v. New York*, 592 U.S. 125, 131, 141 S. Ct. 530, 534-35 (2020). Under the ripeness doctrine, the court will not

---

[6] The parties also disagree over the definitions of "misappropriation," "commingling," and "conversion." Because we find that some claims in the suit do not involve misappropriation, commingling, or conversion at all, we need not decide the meaning of those terms.

address a claim that is not "sufficiently mature," *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995), and is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all." *Trump*, 592 U.S. at 131 (internal quotation marks omitted).

Under Georgia law, "an insurer's duty to pay and its duty to defend are separate and independent obligations." *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565 (1997). The duty to defend "turns on the language of the insurance contract and the allegations of the complaint asserted against the insured," *BBL-McCarthy, LLC*, 285 Ga. App. at 497, so questions concerning the duty to defend are ripe at the start of the lawsuit. However, where the court has decided that the insurer has a duty to defend, the question of whether the insurer has a duty to indemnify is not ripe until the underlying lawsuit is resolved. *See Allstate Ins. Co. v. Emps. Liab. Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971) ("[N]o action for declaratory relief will lie to establish an insurer's liability . . . until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize.")

Medmarc argues that the underlying lawsuit does not need to be resolved for the court to decide its duty to indemnify. We disagree. Yes, there are some situations where a case can be decided before contingent facts are resolved, but the "practical likelihood" of those contingent facts should be "almost inevitable." *GTE Directories Pub. Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1569 (11th Cir. 1995). Such certainty is not present here. Indeed, the Court in *GTE*

supported the inevitability of the contingencies there with the fact that "all the contingencies in th[e] case had disappeared by the time the case went to trial." *Id.* That cannot occur here; Medmarc's duty to indemnify depends on the trial outcome.

The other cases Medmarc points to are also distinguishable. One case, *Snell v. United Specialty Ins. Co.*, 102 F.4th 1208 (11th Cir. 2024), was decided under Alabama law, while the present case is governed by Georgia law. Another case, (*Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330 (11th Cir. 1989), involved the existence of a duty to defend, while this is about the separate and independent duty to indemnify. And other cases, *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941), *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498 (1972), and *Standard Accident Ins. Co. v. Meadows*, 125 F.2d 422 (5th Cir. 1942), concerned whether a party was insured by the insurance company at all, while this case concerns whether an insured party is owed specific coverage. Because the duty to defend (both based on the language in the insurance policy and whether the party has an insurance policy at all) is based on the facts as alleged in the complaint, the existence of that duty does not change as the case evolves. In other words, the question is ripe at the filing. However, the duty to indemnify can change based on future facts; there may be nothing to indemnify depending on the outcome of the case. Thus, that question is not ripe until the case is resolved.

Whether Medmarc will ultimately have to indemnify Fellows and Kushner depends on the resolution of the underlying

case, so the question is not ripe until that case is resolved. Dismissal of the claim was appropriate.

## III.

The District Court did not err when it held that Medmarc has a duty to defend Fellows and Kushner in the malpractice lawsuit or when it held that Medmarc's duty to indemnify claim was not ripe. We affirm.

**AFFIRMED.**